[S. F. No. 14363. In Bank.—January 31, 1933.]

CLARENCE B. EATON et al., Copartners, etc., Appellants, v. FRANK J. KLIMM et al., Constituting the Board of Health, etc., et al., Respondents.

Grover O'Connor for Appellants.

J. A. Pettis, *Amicus Curiae* for Appellants.

John J. O'Toole, City Attorney, and Thos. P. Slevin, Assistant City Attorney, for Respondents.

CURTIS, J.—Plaintiffs sought an injunction to enjoin the Board of Health of the City and County of San Francisco from carrying into effect a resolution adopted by said board declaring the structures occupied by the plaintiffs, as partners in the business of general contractors for street improvement work, to be a nuisance and ordering that said structures be vacated and demolished, and further to enjoin William Quinn, as Chief of Police of said city, from taking summary action against said plaintiffs for their failure to comply with said order.

It appears from the complaint that in 1916 the plaintiffs, as partners in a general contracting business for street improvement work, established their offices, store yards, asphalt mixing plant, shops and other appurtenances connected with said business on a parcel of land situated at 715 Ocean Avenue, which is on the southerly side of Ocean Avenue between Tara and Howth Streets. The property occupied by the plaintiffs embraced more than one-half of the area of the block bounded by Ocean Avenue, Tara, Geneva and Howth Streets. Directly north of the block occupied by plaintiffs is a tract of land owned by said city and county and occupied only by the county jail, and directly to the east of said property of plaintiffs is a block of land zoned as a light industrial district. At the time of the establishment of plaintiffs' business there were practically no dwellings in the immediate vicinity, but since that time families have moved into the neighborhood. In some instances the heads of the families are employed by plaintiffs. The ordinance which zoned the district as a light industrial district expressly provided that any use not conforming with the other sections of the ordinance which existed at the time of the passage of the ordinance (of which plaintiffs' business was one) might be continued.

On May 17, 1928, a complaint signed by William C. Hassler, health officer of said city and county, was filed with the Board of Health, seeking the vacation of said premises of the plaintiffs. The said complaint is as follows: "The conditions complained of are as follows: Said premises, consisting of a two story frame structure used as a mixing plant for rock, sand, gravel, asphalt, and other substances, and a series of nondescript one story wooden sheds, used as places of storage, are insanitary, and a nuisance, and a menace to life and health, in that said plant is lacking in proper facilities to prevent the escape of dust and dirt generated in the manufacture of the mixture prepared in this plant for road building, that the boilers and heating apparatus thereof are likewise lacking in smoke and soot controls, all of which permits the escape over and about the entire neighborhood of fine dirt, dust, particles of sand, and rock, and large flakes of soot, and at times, a dense volume of black smoke, creating a condition that makes it impossible for persons in the vicinity to properly ventilate their homes and impossible to use their yards for play spaces for their children, and as a place for the drying of clothes; furthermore, the operation of said plant during the night hours creates a noise nuisance that disturbs the rest and sleep of those persons in the immediate neighborhood, all of which creates a condition that pollutes the atmosphere of the residential portion of this section and disturbs the peace and quiet of the residents; and furthermore, because of the spur track permitting the bringing into the premises of carloads of gravel, sand, and other materials, and the loading of trucks upon the public sidewalk in front of the plant for the delivery of the finished product thereof, creates a condition that menaces the life and limb of children and other passers-by, all of which is a nuisance and a detriment to the health of the entire neighborhood and a menace to life and limb."

Thereafter, on May 31, 1928, the Board of Health, acting under the authority of ordinance No. 501 (new series) and an amendment thereof designated as ordinance No. 816 (new series), after due notice and a hearing wherein plaintiffs participated, passed a resolution that the firm of Eaton and Smith, "be instructed to abate the nuisance that exists in the operation of this plant, and that the nuisance is said

to consist of dirt, smoke and noise incident to the operation of the plant and the obstruction of the sidewalks with teams". Subsequent to said resolution, the plaintiffs installed apparatus at a cost of approximately $3,000 in an attempt to control and confine to said plant all dirt, odors, smoke and noise incident to the operation of said plant, and took steps to eliminate the obstruction of sidewalks bordering on said plant by the teams of plaintiffs.

Thereafter, on the twelfth day of December, 1929, the Board of Health again, without any notice to the plaintiffs, took up the question of whether or not the said premises constituted a nuisance, decided that it did, and passed a resolution declaring said premises to be "insanitary and a nuisance and a menace to life and health" and ordering that "said structure shall be vacated and demolished and the lot cleared of all old wood, refuse, rubbish and debris and placed in a clean and sanitary condition within 60 days". Mr. Smith, one of the plaintiffs, having heard indirectly that the matter was to be before the board, attended the meeting. In pursuance to said resolution, formal notice was served upon the plaintiffs, in which they were notified that the premises, consisting of a two-story frame structure used as a mixing plant, and a series of nondescript one-story woodsheds used as places of storage had been declared insanitary by the Board of Health at the meeting held on December 12, 1929, and ordering "that such structures shall be vacated and demolished and the lot cleared of all old wood, refuse, rubbish, and debris, and placed in a clean and sanitary condition". Said notice further specified that "failure to comply with the above orders within 60 days will result in this department requesting the Chief of Police to take summary action in accordance with Section 6 of the above ordinance." Plaintiffs thereupon instituted this proceeding for an injunction in an effort to restrain the Board of Health from carrying into effect this said order. After a hearing at which various members of the families in the immediate vicinity of the premises of plaintiffs testified with reference to the conditions arising out of the operation of said plant, the injunction was refused by the trial court. From the judgment denying such injunction the plaintiffs prosecute this appeal.

At the hearing before the trial court there was offered in evidence the testimony of members of six families residing in the vicinity that, for various reasons, the plant was a nuisance so far as they were concerned. On the other hand, testimony of three families, and the superintendent of the Market Street Railway (the yards of which company were situated to the east of the appellants' plant) was to the effect that the asphalt mixing plant operated by appellants caused no annoyance whatever to them, either as to dust, smoke or noise.

From this conflict in testimony appellants argue that since only some of the persons living in the neighborhood are caused annoyance, the nuisance, if such, is necessarily a private nuisance and not a public nuisance and, therefore, the right of redress belongs only to the particular parties injured and the nuisance cannot be abated by a public body acting in the interest of the public. Appellants also argue that the nuisance, if such, being a series of private nuisances, they may interpose the defense that they, by carrying on such business since 1916, have acquired a prescriptive right to maintain a purely private nuisance. We cannot subscribe to the soundness of this reasoning. A public nuisance is defined by section 3480 of the Civil Code as one which "affects at the same time an entire community, or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal". Clearly the conditions complained of affect the entire neighborhood, and the fact that some members of the community are less susceptible to offense by reason of particular conditions, or by reason of the fact that they, because such conditions emanate from the business in which they are employed are willing to suffer such conditions without complaint, cannot convert a public nuisance into a series of private nuisances. It is apparent in the face of the conflict of evidence that the conclusion of the trial court that the operation of the asphalt mixing plant constituted a public nuisance must be upheld. The question of whether or not, considering all of the factors of the situation such as the nature of the district, the direction of the wind, the time when the asphalt mixing plant is in operation, *et cetera*, the operation of the

plant in the manner set forth in the testimony of the various witnesses constituted a nuisance, was a question of fact for the trial court. The trial court having decided, upon a conflict of evidence, that the operation of the asphalt mixing plant did constitute a nuisance, this court cannot say, as a matter of law, that it did not constitute a nuisance.

 Appellants object that there is no finding that the nuisance constituted a *public* nuisance. The findings of the trial court took the form of a specific affirmance or denial of the various allegations set forth in the appellants' complaint. It is, therefore, true that since appellants' complaint merely alleged that the operation of said plant did not constitute a nuisance, that the finding of the court that this allegation was not true merely held that the operation of said plant did constitute a nuisance without specifying whether or not such nuisance was a public or a private nuisance. However, the very nature of the action, a proceeding to secure an injunction to restrain a public body from abating a claimed nuisance, demonstrates that the question presented was whether or not the nuisance was a public or a private nuisance, and the denial of the injunction demonstrates that since the trial court was of the opinion that the Board of Health was entitled to abate said nuisance, the nuisance designated in said findings as a nuisance was a public nuisance.

 The operation of said asphalt mixing plant in the manner complained of constituting a public nuisance, appellants' contention that, since their business was established in the neighborhood prior to the establishment of all of the homes of those complaining, with one exception, said business cannot be abated, cannot be upheld. The theory that a right to maintain a nuisance may be gained by prescription does not apply to a public nuisance. In *People* v. *Detroit White Lead Works*, 82 Mich. 471 [46 N. W. 735, 9 L. R. A. 722], the complaint of defendants therein was similar to that of appellants here—the complaint that the business having been established when the district was not built up, the fact that families had moved in should not operate to the detriment of the established business. The court there held: ''The fact that a business was established in the open country remote from habitations will not defeat a proceeding for the maintenance of a nuisance after the

land in its vicinity has been built up and occupied; such business must give way to the rights of the public, and when buildings and habitations approach the place of its location means must be devised to avoid the nuisance, or it must be removed or stopped." (See 20 R. C. L., pp. 440, 441.)

It is also to be noted that the fact that, by the zoning ordinance which zoned the district as a light industrial district, the appellants were permitted to continue the operation of their plant, is not an absolute defense to proceedings for the abatement of such business on the ground that it constitutes a nuisance. "It has been held a number of times in this court that a license, permit, or franchise does not authorize the creation or maintenance of a nuisance." (*People* v. *City of Reedley*, 66 Cal. App. 409, 413 [226 Pac. 408].) This rule is not only applicable to private nuisances (*Williams* v. *Blue Bird Laundry Co.*, 85 Cal. App. 388 [259 Pac. 484]; *Fendley* v. *City of Anaheim*, 110 Cal. App. 731 [294 Pac. 769]; *Vowinckel* v. *N. Clark & Sons*, 216 Cal. 156 [13 Pac. (2d) 733]), but to public nuisances as well. (*People* v. *City of Reedley*, *supra.*)

We have purposely limited our statement with reference to the alleged nuisance to the "operation of the asphalt mixing plant". We have limited it to the *asphalt mixing plant* for the reason that the trial court expressly found that "the odor, dust, noise and other results of the use of said property, referred to in said resolution, relate exclusively but to one structure on said property. Said structure is located at the northeasterly corner of the property so occupied by plaintiffs, and takes up but a small portion of the area occupied by them, and on the balance of said area no dust, odor, or noise, such as are described in said resolution, could possibly arise. Said asphalt mixing plant is operated by said plaintiffs customarily not more than about sixty days on an average during the year." This finding is supported by the evidence. It follows, we think, that it is only the conditions emanating from the operation of the asphalt mixing plant which constitute the nuisance.

We have also purposely limited our statement to the "operation" of the asphalt mixing plant for the reason

that we are unable, after a careful search of the record, to find any evidence warranting a conclusion that the buildings, or any part thereof, are in an insanitary condition. The conditions of which complaint is made—the escape over and about the neighborhood of fine dirt, dust, particles of sand and rock, and large flakes of soot, and at times a dense volume of black smoke; the creation of "a noise nuisance that disturbs the rest and sleep of those persons in the neighborhood"; and "the loading of trucks upon the public sidewalks in front of the plant"—relate exclusively to the *operation* of the asphalt mixing plant, in other words, to the *use* to which said structure is put, and are not even remotely connected with the sanitary condition of the buildings upon said premises.

We agree with the contention of appellants that ordinance No. 501 (new series) under which the Board of Health purported to act and which purported to furnish authority for its order that said buildings be vacated and demolished, relates solely and exclusively to insanitary buildings, structures or parts thereof, as such, and does not deal or purport to deal with the operation or carrying on in any building, or structures, of a business which may create an insanitary condition outside of and away from said buildings and structures. A cursory reading of said ordinance compels the conclusion that said ordinance was designed to cover, purported to cover, and did cover, only those situations in which the buildings themselves, or any part thereof, were insanitary.

The penalty specified in ordinance No. 501 (new series) related solely to a forcible resistance or prevention of the enforcement of an order of the Board of Health. Therefore, ordinance No. 816 (new series) was subsequently passed adding a further provision that the violation of any of the provisions of ordinance No. 501 (new series) or a failure to comply with any direction or order of the Board of Health pursuant to the provisions of said ordinance, constituted a misdemeanor and that each day of a failure to comply with the directions of the Board of Health constituted a new and separate offense.

It is unnecessary to point out in detail that each and every reference in said ordinance to an insanitary condition is a reference to an insanitary building or structure,

and nowhere contained therein is any statement or expression which even by inference could be held applicable to the operation of a business or the use to which the building or structures may be devoted. The strongest argument that such ordinance relates exclusively to insanitary buildings as such, and not to their use or the operation of the business therein located, is the remedy provided for such nuisance—the immediate vacation and abolition of said buildings unless within forty-eight hours the owner give notice that he will make such alterations and repairs as in the judgment of the Board of Health shall be necessary for the purpose of making said building, structure, or part thereof, sanitary. It follows that, since the nuisance here complained of does not come within the classification specified in said ordinance No. 501 (new series), the remedy therein provided and the penalty prescribed by ordinance No. 816 (new series) for the failure to comply with the orders of the Board of Health passed pursuant thereto, were inapplicable to the instant situation.

It does not follow, however, that appellants were entitled to the injunction which they sought restraining the defendant Board of Health from "taking possession of, or removing, or in any manner whatever interfering with any of the property hereinabove described, or with the business of plaintiffs conducted thereon, or with plaintiffs' operation of said business upon said property". In *McQueen* v. *Phelan,* 4 Cal. App. 695 [88 Pac. 1099], it was held that inasmuch as under section 3494 of the Civil Code "a public nuisance may be abated by any public body or officer authorized by law", public officials could not be restrained by injunction from proceeding, according to law, to abate what is found to be a public nuisance whether the ordinance under which they purported to act was valid, or void. This case involved the propriety of an injunction restraining certain public officials from interfering with plaintiff's carpet-beating works. The court therein conceded for the sake of argument that the ordinance attacked was void, but after stating that the case had gone to trial upon a distinct issue as to whether or not the premises described in the complaint were or were not a nuisance, and the court had found such business to constitute a nuisance, held that the question of the validity of the ordinance was

immaterial and the injunction sought by plaintiff was properly denied. The case did, however, contain the following language, "We do not mean to intimate that any public official may, of his own volition, without any order of court, tear down or destroy a building because he believes it to be a nuisance." In the instant case, the issue of whether or not the operation of appellants' business constituted a nuisance was presented by the pleadings, and the court expressly found that the conditions complained of were true, and that the operation of the plant constituted a nuisance. It follows that the Board of Health under section 3494 of the Civil Code is entitled to abate the operation of said asphalt mixing plant and the trial court properly refused to grant an injunction restraining the Board of Health from interfering *in any manner whatever* with the appellants' business.

As before indicated, however, the appellants were entitled to an injunction restraining the carrying into effect of the drastic order issued by the Board of Health under the purported authority ? ordinance No. 501 (new series); that is to say, the demolishing of the buildings, and the removal of appellants' equipment. Appellants are also entitled to an injunction against the attempted enforcement of said order by the infliction of the penalty specified in ordinance No. 816 (new series) for a failure to comply with said orders.

The judgment is, therefore, reversed, and the cause remanded to the trial court with directions to issue an injunction in accordance with the conclusions herein expressed.

Seawell, J., Shenk, J., Langdon, J., Preston, J., and Waste, C. J., concurred.