[No. F031580. Fifth Dist. Mar. 3, 2000.]

LAMONT STORM WATER DISTRICT OF KERN COUNTY, Plaintiff and Appellant, v.
STEPHEN P. PAVICH et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Wall, Wall & Peake and Stephen E. Wall for Plaintiff and Appellant.

Clifford & Brown, Stephen T. Clifford and John R. Szewczyk for Defendants and Respondents.

OPINION

**BUCKLEY, J.**—Appellant, the Lamont Storm Water District of Kern County, filed a complaint seeking to have certain waters declared "flows within a natural watercourse" and, further, to have "the diversion of such flows" declared "an abatable public nuisance under the law of this State including by injunction." The trial court entered judgment against appellant after it sustained a demurrer to appellant's complaint. On appeal, we will conclude the trial court properly sustained the demurrer of respondent landowners and we will affirm the judgment.

### Facts and Procedural History

Because this appeal comes to us after the trial court sustained respondents' demurrer, we accept the facts as alleged in the complaint. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 558 [71 Cal.Rptr.2d 731, 950 P.2d 1086].)

For decades—possibly since the mountains were new—surface water in the Caliente Canyon watershed in the mountains of southern Kern County collected in various creeks, consolidated into Caliente Creek, and terminated in an alluvial cone on the floor of the San Joaquin Valley. In times of heavy rain or snowmelt, the alluvial cone was extensive, covering thousands of acres.

In 1923, the Town of Lamont was settled. It now has about 14,000 residents. In 1984, after extensive flooding of the town by the Caliente Creek

outflow in 1983, the Kern County Board of Supervisors formed the Lamont Storm Water District pursuant to the Storm Water District Act of 1909. (Stats. 1909, ch. 222, § 1, p. 339.) The complaint does not state the nature of the storm water control projects, if any, appellant has undertaken.

The complaint alleges appellant wrote several letters, however, seeking remediation of certain conditions that caused redirection of the outflow from Caliente Creek. Appellant contended in these letters that this redirection of the outflow resulted in flooding in Lamont in periods of heavy rain. Among the conditions about which appellant complained was a structure described as a dike or berm commonly called the Tamarisk Tree Line. This structure, composed of dirt, rock, rubble, old car bodies, and (presumably) trees, was built initially in the 1930's and repaired and reinforced thereafter. The dike is about 1.5 miles in length across part of the Caliente Creek streambed or the alluvial cone. The dike forces outflow from Caliente Creek to flow to the west, causing greater flooding in Lamont than otherwise would occur.

In February of 1998, after a period of unusually heavy rains, outflow from Caliente Creek once again flooded Lamont.

In March of 1998, appellant filed a complaint for declaratory relief against King Pak Farms, Inc., the County of Kern, Stephen P. Pavich and Thomas D. Pavich. Appellant dismissed King Pak Farms, Inc. The court sustained the remaining defendants' demurrers without leave to amend. The court entered judgment against appellant on June 15, 1998. The judgment states appellant was "without standing to bring this action, and the complaint for declaratory relief did not seek definite and conclusive relief or present an actual controversy."

Appellant filed a timely notice of appeal "from that portion of the Judgment . . . dismissing defendants, Stephen P. Pavich and Thomas D. Pavich . . . ."

*Discussion*

I. *Standing*

Appellant contends it has standing to pursue this declaratory judgment action. Respondents concede ("absent a decision from this Court that the

provisions of C.C.P. § 731 operate to overrule [*Eaton v. Klimm* (1933) 217 Cal. 362 [18 P.2d 678]]") appellant has standing to pursue the action.[1]

■ We reject respondents' attempted concession. We conclude *Eaton v. Klimm, supra,* 217 Cal. 362, does not address the circumstances before us in the present case. Therefore, appellant does not have standing to pursue a declaratory judgment action involving this alleged public nuisance.

Appellant's argument on standing has two components, both poorly developed in its briefs. First, appellant contends it is a "public body or officer authorized . . . by law" to abate public nuisances within the meaning of Civil Code section 3494.[2] Second, appellant argues that the present action is not one to *abate* a public nuisance, but merely an action to declare that the dike *is* a public nuisance.

Appellant relies on the general empowerment section of the Stormwater District Act of 1909. Section 8 of the act, as amended in 1984, provides, in relevant part: "Each storm water district shall have power to sue and be sued. . . . The said board of trustees shall also have power to employ such engineers, surveyors and others as may be necessary to survey, plan, or locate, or supervise the construction or repair of, the improvements necessary to carry out the purposes for which the district was formed; to construct, maintain and keep in repair any and all improvements, requisite or necessary to carry out the purposes of the district; and to do any and all other acts and things necessary or required for the protection of the lands in said district from damage from storm waters and from waters of any innavigable stream, watercourse, canyon or wash . . . ." (Stats. 1984, ch. 1128, § 77, p. 3913; 71 West's Ann. Wat. Code—Appen. (2000 supp.) § 13-8, p. 39.)

Similar powers, of course, are enjoyed by entities of all kinds, from the California Strawberry Commission (see Food & Agr. Code, § 77451, subds. (b), (q)) to nonprofit corporations. (See Corp. Code, § 17003, subds. (b), (t); see also *id.* at § 207.)

Nevertheless, when the Legislature has intended to grant the power to abate a nuisance, it has done so specifically and in clear terms. Thus, Code

---

[1]In pertinent part, Code of Civil Procedure section 731 states: "A civil action may be brought in the name of the people of the State of California to abate a public nuisance, as the same is defined in section thirty-four hundred and eighty of the Civil Code, by the district attorney of any county in which such nuisance exists, or by the city attorney of any town or city in which such nuisance exists, and each of said officers shall have concurrent right to bring such action for a public nuisance existing within a town or city, and such district attorney, or city attorney, of any county or city in which such nuisance exists must bring such action whenever directed by the board of supervisors of such county or whenever directed by the legislative authority of such town or city."

[2]Civil Code section 3494 states: "ACTION. A public nuisance may be abated by any public body or officer authorized thereto by law."

of Civil Procedure section 731 provides that the district attorney and the city attorney have the right and, upon direction from their respective legislative bodies, the duty to bring an action to abate a public nuisance.

In the case of special districts, we find similar specific authorizations. For example, the Legislature has authorized mosquito abatement districts to take "all necessary or proper steps for the control of mosquitoes, flies, or other vectors, either in the district or in territory not in the district but so situated . . . that mosquitoes, flies, or other vectors may disperse from the territory into the district." (Health & Saf. Code, § 2270, subd. (a).) Nevertheless, the Legislature also specifically established the power of such a district to "[a]bate as nuisances all standing water and other breeding places for mosquitoes, flies, and other vectors" in the same areas described in subdivision (a). (Health & Saf. Code, § 2270, subd. (b).)

In the case of sanitary districts, the Legislature has authorized the districts to "sue and be sued." (Health & Saf. Code, § 6511; see also *id.* at § 6512 ["necessary and proper" clause].) But in addition, the Legislature specifically provided that the "district may also petition the superior court for the issuance of a preliminary or permanent injunction . . . restraining any person from the continued violation of any ordinance of the district." (Health & Saf. Code, § 6523.3.)

Our final example is from the Food and Agricultural Code. Section 5403 specifically authorizes county agriculture commissioners to abate certain agricultural nuisances "by eradicating, controlling, or destroying the pest." Nevertheless, it appears that the commissioner must proceed through the district attorney or county counsel if the commissioner elects to seek abatement of the nuisance through court order. (See Food & Agr. Code, §§ 5401, 5572; see also *Skinner v. Coy* (1939) 13 Cal.2d 407, 418 [90 P.2d 296].)

By contrast, appellant's enabling legislation grants the general power to sue and be sued, and the specific power to acquire property through eminent domain. That legislation does not enumerate the power to file actions to abate nuisances as among a storm water district's powers. (See 71 West's Ann. Wat. Code Appen., *supra*, § 13-8, p. 39.) We conclude appellant does not have that power.

*Eaton v. Klimm, supra,* 217 Cal. 362 does not require a different conclusion. In that case, property owners sued the Board of Health of the City and County of San Francisco for an injunction to prevent the board of health from acting to abate plaintiff's industrial activity as a nuisance. The board of health, unlike the present appellant, was authorized by the City and County

of San Francisco to act on behalf of the entire public. (See *id.* at p. 366.) As noted above, section 731 of the Code of Civil Procedure specifically grants cities the power to require the city attorney to sue to abate nuisances.

Thus, in *Eaton* the city merely elected to exercise its statutory power through its own board of health. The holding of the case was simply that, even though the board of health had standing to abate nuisances, the nuisance complained of did not come within the ordinance enforced and the property owners' injunction was improperly denied. (*Eaton v. Klimm, supra,* 217 Cal. at p. 372.) In the present case, appellant is not a board or department of a city or county; to the contrary, the complaint alleges, in effect, that the county has *refused* to seek abatement of the alleged nuisance. Accordingly, nothing in *Eaton v. Klimm* supports appellant's claim of standing to sue to enjoin the alleged public nuisance.

II.  *Declaratory Relief**

* * * * * * * * * * * * * * * * * * * * * * * *

DISPOSITION

The judgment is affirmed. Costs are awarded to respondents.

Ardaiz, P. J., and Thaxter, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 2000.

---

*See footnote, *ante,* page 1081.