[Civ. No. 5943.   Second Appellate District, Division One.—March 19, 1928.]

JOHN H. MOORE, Petitioner, v. THE CITY OF SAN DIEGO (a Municipal Corporation) et al., Respondents.

F. G. Blood for Petitioner.

Jas. E. O'Keefe, City Attorney, Stephen Connell, District Attorney, and E. S. Lovett, Deputy District Attorney, for Respondents.

HOUSER, J.—From the record herein it appears that under the provisions of an act to provide, among other things, for the "consolidation and abolition of certain municipal offices, and to provide that their duties may be performed by certain officers of the county" (Stats. 1895, p. 219, and amendments thereto; Deering's Gen. Laws [1923] Act 8464), as well as pursuant to the provisions of the charter of the city of San Diego (chap. 4, art. I; sec. 32, chap. I, art. VI) a properly signed initiative ordinance was filed with the city clerk of said city of San Diego, which in effect provided that the duties of assessing the property and collecting taxes provided by law to be performed by the assessor and the tax collector of said city should thereafter be performed by the county assessor and the county tax collector respectively of the county of San Diego—said county being the county in which said city of San Diego is situated. Thereafter, and on the fourth day of May, 1927, and in due course of law (without election by the people), the city council of the city of San

Diego passed and adopted the said initiative ordinance which, on the tenth day of May following, was signed and approved by the mayor of the city. On May 12, 1927, a certified copy of such ordinance was filed with the county auditor of the county of San Diego, and thereafter, to wit: on the thirteenth, fourteenth and sixteenth days of May, 1927, in pursuance of the law in such cases made and provided, the ordinance was duly published in a newspaper. It further appears that the city council of the city of San Diego and each of its members, as well as each of the other individual respondents herein, has neglected and refused, and so continues in such neglect and refusal, to take any action, or to do or perform any act or acts required to be done or performed by them or either or any of them in furtherance of such consolidation of offices, as provided either by the statute, or by the provisions of the charter of the city of San Diego, to which reference has been had. Wherefore, the petitioner herein has prayed that this court issue its peremptory writ of mandate, commanding said respondents and each of them, in their and each of their respective capacities, as provided by law, to specifically comply with the requirements of the statute and the provisions of the charter of the city of San Diego applicable to the situation as hereinbefore set forth. The respondents have demurred to the petition, and urge that because of certain alleged defects occurring in the initiative ordinance and in proceedings subsequent to its adoption, as well as the unconstitutionality of a statute later in its enactment than the statute under the provisions of which the proceedings relating to the ordinance in question were instituted, the respondents were and are entirely justified in the legal position assumed by them and each of them. At the outset, therefore, in order that a better understanding of the situation herein involved may be had, it is desirable that some examination may be had of each of the statutes, as well as of the several charter provisions of the city of San Diego, which have a bearing on the controversy. But before proceeding to the main controversy herein one minor objection of respondents should be noticed. ■ It is suggested that the initiatory ordinance was prematurely filed with the county auditor of the county of San Diego. In that connection, the provision of

the statute is that a certified copy of the ordinance shall be filed "on or *before* the first Monday in the month of February immediately following the adoption of the ordinance." As the statutory requirement appears to have been fully met, we can see no merit in respondents' contention.

By section 1 of the act (Stats. 1895, p. 219) "any municipal corporation or city in this state, . . . " is given the right, and power to elect, by ordinance, that the duties of its city assessor and city tax collector shall be performed by the county assessor and county tax collector respectively of the county in which such municipal corporation or city is situated; that (as hereinbefore stated) a certified copy of such ordinance must be filed with the auditor of such county on or before the first Monday in the month of February immediately following the adoption of such ordinance—following which the various steps to be taken in connection with the change of offices and the duties of the various city and county officers, including each of the officers represented by the several respondents herein, are specifically set forth.

By section 32, chapter I, article VI, of the charter of the city of San Diego, the common council thereof is empowered to adopt an ordinance authorizing the abolition of the offices of city assessor and city tax collector, and to provide therein for the assumption of the duties of such officers by the San Diego county assessor and tax collector respectively. Such charter provision further authorizes the city council to provide by such ordinance "a system for the assessment, levy and collection of all taxes; . . . to change the fiscal year of said city of San Diego; . . . and to make all such provisions as said common council may deem necessary to carry into effect the provisions of this section according to its true intent and meaning, . . . "

By section 1 of another act (Stats. 1913, p. 499) in substance identical in most respects with the act under which the consolidation of the city offices and the county offices herein was initiated, it is provided that "the duties of the officers of *any city governed under a freeholders' charter*" may be taken over by corresponding officers, etc., and, finally, by section 8 of said act of 1913, it is provided that:

"This act shall in nowise affect any other act or acts providing that duties of officers of cities may be performed by

county officers; and if any such act or acts provide for or apply to the performance by county officers of the duties of officers of cities governed under freeholders' charters, this act is intended to, and does provide an alternative method by which the duties of the officers of any such city with respect to the matters mentioned in section two of this act may be performed by officers of the. county in which such city is situated.''

With reference to the challenged constitutionality of the Statute of 1913, page 499, to the provisions of which reference herein has been had, it is clear that if for the sake of argument it be conceded that it is discriminatory, and that the attempted classification of cities therein is such as is not warranted by any constitutional provision of this state, it would follow that such statute being void, it could have no effect on the validity and operation of any of the provisions of the statute under which the initiatory proceedings here under consideration were undertaken. On the other hand, if the questioned statute is constitutionally sound, the result is that by its terms an alternative method is provided by which the duties of the city officers of the city of San Diego affected by the proposed initiative ordinance with which this proceeding is concerned may be performed by the proper respective officers of the county of San Diego. So that, viewed from either standpoint, the standing of the statute under which the proposed consolidation of offices was instituted is unimpaired.

The specific objection is urged by respondents that by the ordinance as adopted no provision was made either for a system for the assessment, levy, and collection of taxes, or for the changing of the fiscal year; and that because the ordinance originated through the initiative power of the people, and not in the legislative body of the municipality, such body of its own initiative is powerless to adopt the desired legislation, and consequently that the ordinance already adopted in effect becomes a ''dead letter''—incapable of administrative enforcement.

As hereinbefore set forth, it is by charter provision only (sec. 32, chap. I, art. VI) that either a ''system'' for the assessment, levy and collection of taxes, or a change in the fiscal year in the city of San Diego, is specially authorized

to be included within an ordinance of proposed consolidation of municipal offices with corresponding county offices. The statute to which attention has been directed and under which the proceedings looking to the adoption of the ordinance in question were instituted, contained no requirement for the adoption by a municipality of either a so-called "system" for either or all the purposes relating to the collection of taxes, or to the necessity of changing the fiscal year of the municipality. Apparently, the main and primary object of the statute, as well as of the charter provision of the city of San Diego to which reference has been had, is to provide a means whereby the work and the expense of collecting taxes by city officers may be eliminated. The consolidation of the city offices with the corresponding county offices having been consummated by virtue of the provisions of the statute and the ordinance made permissible by the provisions of the charter of the city of San Diego, the method, or means, or "system" adopted, or to be adopted, by the proper legislative or administrative officers in carrying on the work made necessary by such consolidation, becomes incidental only to the principal object of the legislation. For aught that appears, although it is possible and even probable that a "system" and a "change in the fiscal year" would be advantageous, nevertheless neither of such most desirable conditions is absolutely essential to the consolidation of the offices in question. While by the terms of the section of the charter of the city of San Diego to which attention has been directed, in accordance with the ordinance which provides for the proposed consolidation of the offices here under consideration, the common council of such city is given the authority or power to include in such ordinance adequate provisions for a "system" and for a "change in the fiscal year," we see nothing in the language of the charter provision which would indicate that such action on the part of the city council was compulsory. Assuming a continuing jurisdiction in the city council, without so deciding, it may be that such matters as providing a "system" for the transaction of the business of any department of a city, or for changing the "fiscal year" of a city, are within the implied or the incidental powers of the municipal corporation, and, hence, that ordinarily no express charter provision

would be necessary to enable the city to accomplish either or both of such objects. ■ The question whether a "system" for doing the work of levying and collecting taxes, other than the existing laws, is necessary, or whether it is advisable to change the "fiscal year," are matters calling for the exercise of judgment and discretion on the part of the common council of the city of San Diego. In such circumstances it is well settled that *mandamus* cannot be used to direct the desired legislation. Hence it follows that as to each and all of the respondents herein having to do in their or either of their respective official capacities with the adoption of any proposed ordinance, the writ should be and it is discharged. But as to the remaining respondents, in view of the fact that their and each of their duties are administrative in nature only, and that such duties are specifically provided for by statute, it is ordered that as to them and each of them they do and perform each and all of the acts respectively provided for by the statute applicable to the consolidation of the offices in question and as specifically prayed in the petition herein. The demurrer to the petition herein is overruled.

Let the peremptory writ issue, for the performance of said administrative duties, as hereinbefore indicated.

Conrey, P. J., and York, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 17, 1928.

All the Justices concurred.