[Civ. No. 1151.   Fourth Appellate District.—August 22, 1934.]

CITY OF FULLERTON (a Municipal Corporation), Appellant, v. COUNTY OF ORANGE (a Political Subdivision), Respondent.

Albert Launer, City Attorney, Launer & Thompson and William B. Wade for Appellant.

S. B. Kaufman, District Attorney, and W. F. Menton, Assistant District Attorney, for Respondent.

MUNDO, J., *pro tem.*—The cause was submitted to the court on an agreed statement of facts which in substance asserted that the City of Fullerton elected to have the county officers of Orange County collect its taxes under the provisions of an act entitled "An Act to provide for the levy and collection of taxes by and for the use of municipal corporations and cities incorporated under the laws of the State of California, etc. . . . " (Stats. 1895, p. 219, said act being designated 8464, Deering's Gen. Laws, 1931.) Section 1 of the act referred to provides in part as follows:

"Any municipal corporation or city in this state, except municipal corporations of the first class, shall have power to elect, by ordinance adopted by the board of trustees, common council, or other legislative body, or the electors of such city or municipal corporation, that the duties of assessing property and collecting taxes provided by law to be performed by the assessor and the tax collector of such city, or municipal corporation, shall be performed by the county assessor and the county tax collector of the county in which such city or municipal corporation is situated."

In pursuance of such election the county officers of Orange County began the assessing, levying and collection of the taxes of the City of Fullerton for the fiscal year 1905–1906, and have continued the process up to the present time. The moneys collected for taxes and special assessments were remitted to the city, but none of the moneys collected by said officers covering penalties and interest on taxes and special assessments that had become delinquent during all of the period from and including the fiscal year 1905–1906, up to December 31, 1930, were ever remitted to the city, but were by said county officers diverted to the county treasury. The city did not discover that the penalties and interest so collected had not been paid to the city, or that the same had been diverted to the county treasury, until some time in October, 1930, and the present action was brought against the county on May 21, 1931, for an accounting and for a judgment against the county for the amount so found due the city.

The complaint contains a separate count for each fiscal year beginning with the year 1905–1906, up to the thirty-first day of December, 1930, twenty-six counts in·all. By leave of court the complaint was amended adding a count based on fraud, and another based on mistake. The twenty-seventh count alleged that certain misrepresentations were made in the warrants that were issued to the city which led the city to believe that the payments covered all the moneys collected; that the county officers concealed from plaintiff the fact that the moneys in issue had been diverted to the county treasury.

The defendant county filed its answer alleging it had fully accounted for all moneys collected, and setting up the defense of the statute of limitations to the first twenty-two causes of action, but not to the twenty-seventh or twenty-eighth causes of action.

The court found that in assessing, levying and collecting the taxes sued for, in the representations made, things done, and in the diversion of said funds, the county officers were not the agents of the county, but were acting solely for the plaintiff, and for that reason the county was not guilty of fraud; that the first to the twenty-second causes of action were barred by subdivision three of section 338 of the Code of Civil Procedure. Judgment was rendered

for plaintiff on the twenty-third count to the twenty-sixth, inclusive (which counts covered penalties and interest on taxes collected for fiscal years 1927–1928 to and including 1930–1931). Plaintiff appeals from that part of the judgment limiting its recovery to the amounts of penalties and interest for the three years prior to the institution of the action.

This case is one of a number of similar cases filed against the county by various cities and in which a judgment similar to the judgment rendered here was rendered in each of such cases, except that in none of the other cases was fraud and mistake pleaded. In each of the other cases in which judgment was rendered, the court found against the defendant on the issue of the liability of the county for penalties and interest, but held that the statute of limitations as provided in section 338 of the Code of Civil Procedure applied in each case. The question to be decided is whether the action is barred by this section. Appellant submits three reasons for holding that the section does not apply, and they are: 1. The moneys collected and diverted are funds held in trust for a public use, and, notwithstanding section 345 of the Code of Civil Procedure, the statute of limitations does not run against the action at all. 2. Fraud. 3. The county is an involuntary trustee of a fund arising out of fraud and the statute of limitations does not begin to run until the discovery of fraud.

Plaintiff contends that the county holds these funds as a trust fund for the benefit of the sovereign people of the state and that, under the doctrine that lapse of time does not bar the crown, the statute of limitations does not apply where the question involved is the rights of the sovereign people of the state. "Controversies over the application of this rule more frequently arise from a failure to understand what are and what are not 'public rights', than from a failure to understand the rule. In a sense, every right possessed by a municipal corporation is a public right, and every class of property held by it is held in its public capacity, and for public use, but for the purpose of distinguishing such rights, as only that part of the public included within the corporate limits of a municipality are interested in, from such rights in which all the people of the state are interested, the former class is designated by

law writers and courts as 'private rights', and the terms 'public rights' and 'public capacity', are used only with reference to such rights, uses and capacities, as all the people of the state are alike interested in. To actions brought in relation to 'public rights', using the term to indicate such rights as belong to all the people of the state alike, the statute of limitations does not apply, while as to actions brought in relation to 'private rights', using that term to designate such rights as are limited to some local subdivision or municipality such as a city, village, school district or the like, the statute of limitations applies to the same extent as to individuals.'' (*Chicago* v. *Chicago etc. R. Co.*, 163 Ill. App. 251, 254; 37 C. J. 716.)

In *Payette* v. *Marshall County*, 180 Iowa, 660 [163 N. W. 592], the rule was touched upon by the court, tersely, holding: ''Where a county is seeking the enforcement of judgments not for the use or benefit of the state, nor for the use or benefit of the general public but solely in its own interest and in the interest of that particular part or faction of the public within its local jurisdiction, the statute of limitations applies to the same extent as if the action were brought by an individual.''

'' . . . Local public corporations, such as municipalities, counties and school districts, are amenable to the statute of limitations with regard to property or contract rights which the corporation claims for its own convenience as a corporation. In such cases it is held not to represent the sovereign, but only itself and the parties directly or locally interested.'' (*Central Hospital, etc.,* v. *Adams,* 134 Tenn. 429 [183 S. W. 1032, L. R. A. 1916E, 94] ; 37 C. J. 715.)

In *Ralston* v. *Town of Weston*, 46 W. Va. 544 [33 S. W. 326, at p. 328, 76 Am. St. Rep. 834], the court said: ''The state is not the sovereign in this country. The people who make it are the sovereign, and all its officers are but their servants. So, statutes of limitations, which are made to apply to the state, do not apply to the people or their public rights. But they only apply to the state in the same cases that they apply to individuals. The entry upon, or recovery of, lands held for sale, suits on bonds, contracts, evidences of debt, or for torts,—all these, though the state is a party, are subject to bar. As to all such things, there is no reason why the state should have any longer time

than an individual. Such is not the case with the right of taxation, the right of eminent domain, the right to use the public highways, and other rights, which pertain only to the sovereignty of the people. None of these can ever be lost by the negligence of the public servants, who have no power of disposal over them in any way whatever, except according to the express will of the people.''

In *Warren County* v. *Lamkin*, 93 Miss. 123 [46 So. 497, 22 L. R. A. (N. S.) 920], it was held that the statute of limitations applies against a county to bar an action of ejectment by it to recover possession of premises not devoted to a public purpose. The court said: ''It is apparent on casual examination that, if between private persons, recovery in this case would be impossible. But a slice of sovereignty in the shape of a county as plaintiff erects itself here, and, while there can be no criticism of the authorities in trying to recover what may be legally public property, still courts will be disposed, if they can, to apply the same rules that the law applies as between the humblest and most unpretentious private citizens. This is incumbent on us, and exceptions in favor of sovereignty in matters of property on the application of the statute of limitations must have, of course, strict construction as against the sovereignty. The doctrine, '*Nullum tempus occurrit regi*', in its enlarged scope, is the invention and one of the instruments of despotism, and has no place in free countries, if it be attempted to go beyond the point of application strictly to holdings for the public user by the people, such as streets, parks, necessary grounds for courthouses, jails, public hospitals, etc.''

The case cited by plaintiff, and upon which it lays great stress, is that of *City of Osawatomie* v. *Board of Commissioners of Miami County*, 78 Kan. 270 [96 Pac. 670, 130 Am. St. Rep. 369]. It is cited in support of the contention that ''where a county diverts to its own treasury a part of the money it has collected upon taxes levied by a city, no statute of limitations runs against an action by the city to recover the amount so wrongfully withheld''. This case rejects the geographical or territorial test proposed in *Central Hospital, etc.*, v. *Adams, supra* (see, also, note on page 184 of 101 Am. St. Rep.) and holds that, ''Inasmuch as the city exists in part as an agency of the state for general

governmental purposes, and its maintenance depends upon its power to levy and collect taxes, it might be argued that the state itself, or the general public, has an interest in protecting the exercise of that power." But even this case recognizes the universal rule that no statute of limitations will run against the state or the sovereign authority unless the statute itself so provides, or unless the implications of the statute to that effect are so strong as to be utterly unavoidable. The court said: "The power of taxation is an essential attribute of sovereignty. . . . No statute of limitation should apply to any steps in the exercise of that power unless a legislative intention that it should do so is expressly stated or appears by the clearest implication."

In this state the statute of limitations has, by express provision of the legislature, been made applicable to actions brought in the name of the state or for the benefit of the state, in the same manner as to actions by private parties. (Code Civ. Proc., sec. 345.) The legislative policy evidenced by this section was construed in the case of *State Board of Health* v. *Alameda County,* 42 Cal. App. 166 [183 Pac. 455], to mean that the statutes of limitations are applicable to the state, or any arm thereof, even though the cause of action arises in the exercise of its governmental functions. (*People* v. *Melone,* 73 Cal. 574 [15 Pac. 294]; *San Francisco* v. *Luning,* 73 Cal. 610 [15 Pac. 311].)

In some states the duty of collecting taxes for municipalities of certain classes is performed by county officers. When the county officers act in this capacity for a city they are *ex-officiis officers* of that city. (*Madary* v. *City of Fresno,* 20 Cal. App. 91 [128 Pac. 340].) They become, by law, the agents of the city to collect the taxes for the city. They do not lose their identity as county officers. Although they act for the city, they are county officers, performing a county function imposed upon them by law.

The trial court in the case of *City of Centerville* v. *Turner County,* 23 S. D. 424 [122 N. W. 350], found, upon facts quite similar to the instant case, that the defendant county "is made by law the agent of the plaintiff to collect, and enforce the collection of, the said taxes, and the relationship existing between the plaintiff and defendant is a fiduciary one, and the said taxes when so collected by the county became, and is, a trust fund in the possession of

the said county acting as a trustee of an express trust". Judgment was entered against the defendant county for the full amount claimed due covering a period of years. The county appealed, contending that the statute of limitations should operate to bar recovery for a part of said period. Upon this point the Supreme Court of South Dakota agreed with the county, and held: "It is contended on the part of plaintiff that inasmuch as the trial court found that the defendant is made by law the agent of the plaintiff to collect the said taxes, and that the relationship between plaintiff and defendant was a fiduciary one, and that said taxes, when collected, were a trust fund in the hands of the defendant, in the execution of an express trust, the statute of limitations will not run. This seems to be the general rule in some jurisdictions where there has been a misappropriation of trust funds; but, even in those jurisdictions, it seems to be held that, where the public officer or municipality retains the money under claim or color of right, as in the case at bar, then the statute of limitations applies, and that the claim will be barred after the statutory limit has expired. (25 Cyc. 1164; *Newsom* v. *Bartholomew*, 103 Ind. 526 [3 N. E. 163]; *Churchman* v. *Indianapolis*, 110 Ind. 259 [11 N. E. 301]; *Jasper District Twp.* v. *Wheatland Twp.*, 62 Iowa, 62 [17 N. W. 205].) But whatever the rule may be in other jurisdictions, we are of the opinion that section 60, subdivision 2, Revised Code of Civil Procedure, providing: 'Within six years: An action upon a liability created by statute, other than a penalty or forfeiture'—is conclusive of this question. The right to recover in this action is upon a liability created by statute. Other jurisdictions having a similar statute of limitations on this point uniformly seem to hold that it applies to this very character of action, and that authorities in jurisdictions without such a statute are not applicable even in trust cases. (25 Cyc. 1052, and cases there cited under notes 29 and 30.)" (See, also, *City of Webster* v. *Day County*, 26 S. D. 50 [127 N. W. 624].)

The Centerville case was reconsidered and the question of the relationship between the city and the county was dealt with. The court concluded that the trust relation involved was an implied or constructive trust, an involuntary trust arising by operation of law. " 'To prevent the application

of the statute in favor of a trustee the trust must be created by the direct act of the parties, and, when a person is charged as trustee by implication or constructive trust of law, he may claim the protection and benefit of the statute.' '' (*City of Centerville* v. *Turner County*, 25 S. D. 300 [126 N. W. 605].)

The primary object of the statute, which authorized the defendant county to collect the taxes for the City of Fullerton and other cities, is to provide a means whereby the work and expense of collecting taxes by city officers may be eliminated. (*Moore* v. *City of San Diego*, 90 Cal. App. 242 [265 Pac. 864].) The work done by the county officers is paid for by the city, not to the officers performing the services, but to the county itself. The county officers when performing under the provisions of the statute are, as we have indicated, performing a county function for which the county receives payment from the city. The relationship existing between the county and city is an implied or constructive trust, an involuntary trust arising by operation of law, and the county is entitled to claim the benefit of the statute of limitations.

Turning to the stipulation of facts we find, instead of fraud, a situation which fully warrants the conclusion that the retention of the moneys claimed could have been discovered by the city upon investigation, and nowhere do we find any acts on the part of the county officers which in anywise constitute concealment. In truth, the situation as a whole indicates that the county officers retained these moneys for the county under a claim of right adverse to the city. At any event the record does not disclose, nor even suggest, any intent on the part of the county officers to defraud the city. Counsel for respondent declares that the counts charging fraud and mistake were pleaded to escape the bar of the statute of limitations; but, regardless of the purpose, it must be held that they are unavailing, for we find no fraud nor mistake to substantiate them. The causes of action, one to twenty-two, inclusive, were amenable to and barred by subdivision three of section 338 of the Code of Civil Procedure.

The judgment is affirmed.

Marks, Acting P. J., and Jennings, J., concurred.