[S. F. No. 16293. In Bank.—April 16, 1941.]

COUNTY OF LOS ANGELES et al., Petitioners, v. SUPE-
RIOR COURT OF LOS ANGELES COUNTY, Respond-
ent.

J. H. O'Connor, County Counsel, S. V. O. Prichard, Assistant County Counsel, A. Curtis Smith, Deputy County Counsel, Ray L. Chesebro, City Attorney, Leon T. David, Assistant City Attorney, and Franklin W. Peck, Deputy City Attorney, for Petitioners.

Holbrook & Tarr, W. Sumner Holbrook, Jr., for Respondent.

CARTER, J.—By this proceeding in prohibition, petitioners, county of Los Angeles and city of Los Angeles seek to restrain respondent superior court from trying 100 or more tax actions wherein the county is named as sole defendant, without first joining as additional parties defendant, the city of Los Angeles, the Los Angeles City School District, Los Angeles City High School District, and Los Angeles City Junior College District.

The actions were brought under section 3804 of the Political Code by respective claimants numbering upwards of 1500, to procure the refund of an aggregate amount of approximately $4,000,000, representing taxes alleged to have been erroneously levied for the fiscal or tax years 1933–1934, 1934–1935, and 1935–1936, as a result of improper budgeting practices on the part of the named entities. Three of the causes, typical of all of them except for variations as to year, rates, figures, and items of tax, were set for trial, and the remaining cases were grouped according to years, and consolidated for trial in such manner that all cases involving taxes for the same fiscal year would be heard together. All of the taxes had been collected by county officers and had long since been paid over to the respective entities entitled to receive the same.

Prior to the date set for trial of the first three causes, defendant county moved the court in each of the actions for an order to bring in the city of Los Angeles and other named entities as parties defendant. The ground of the motions was that a complete determination of the controversy could not be had without the presence of said entities and without

prejudice to their rights. On August 4, 1939, each and all of the motions were denied. This proceeding followed.

At the outset it may be noted that the problem presented is purely one of compulsory and not of permissive joinder (sec. 389, Code Civ. Proc.). Concededly the absent parties are interested in the issues and subject matter of the actions and might properly have been joined as defendants therein (*Brill* v. *County of Los Angeles,* 16 Cal. (2d) 726 [108 Pac. (2d) 443]), but no claim of misjoinder or defect of parties was raised by demurrer (secs. 430, 434, Code Civ. Proc.), nor was application to intervene made by any of said entities (sec. 387, Code Civ. Proc.). ▮ The sole question, therefore, is whether those entities are "indispensable parties" in the sense that service upon them or their appearance is essential to the jurisdiction of the court to proceed in the actions, for unless the procedural defect of parties is jurisdictional, prohibition will not lie. (*Ambassador Pet. Co.* v. *Superior Court,* 208 Cal. 667 [284 Pac. 445]; *Morrow* v. *Superior Court,* 9 Cal. App. (2d) 16, 26 [48 Pac. (2d) 188, 50 Pac. (2d) 66]; *Bank of California* v. *Superior Court,* 16 Cal. (2d) 516 [106 Pac. (2d) 879].) Reference may be had to the case last cited for a full discussion of the distinction between proper parties, necessary parties, and those persons coming within a special classification of necessary parties, to which the term "indispensable" is appropriate.

Many years prior to the period of this litigation the county officers had been entrusted with the duty of assessing and collecting taxes for the city and other entities. By appropriate ordinance and charter provisions, as sanctioned by section 6 of article XI of the state Constitution, the taxing functions of the city had been transferred to and consolidated with the county system (*Brill* v. *County of Los Angeles, supra*). City Ordinance 40302, as amended by ordinance 45027, approved November 14, 1922, among other things provided: "Any taxes, together with any penalties thereon heretofore or hereafter paid for the use of or on behalf of the City of Los Angeles may be refunded by the County Auditor in all cases where a refund of county taxes and penalties thereon is provided for under the provisions of Part III, Title IX of the Political Code of the State of California."

Part III, Title IX of the Political Code contained section 3804 (now sec. 5096 et seq., Rev. and Tax. Code), pursuant to which the tax actions here involved were instituted. That statute empowered the county treasurer, by order of the board of supervisors, to make refunds of erroneously or illegally collected taxes from any moneys in his possession belonging to appropriate funds of the entities on whose behalf the taxes had been levied. A similar and concurrent remedy was afforded by section 3819, also found in Part III, Title IX of the Political Code. Section 3819 expressly names the county as the party against whom the refund action should be brought, and the implication of section 3804 was to the same effect. Although section 3819 was amended in 1937 (Stats. 1937, chap. 185; see also sec. 5138, Rev. and Tax. Code), to require the joinder of other entities as parties to the refund suit, during the period here involved neither statute provided for such joinder, and concededly there was no other statute expressly authorizing the maintenance of a suit for refund directly against said entities.

For a period of over twenty years it had been an accepted administrative procedure for the county, without reference to or joinder of the other entities concerned, to prosecute suits for the recovery of taxes levied on behalf of said entities, and also to make refunds of taxes illegally exacted by them, to defend suits for refund, pay judgments, and offset such payments against moneys due the entities from appropriate funds in the possession of the county treasurer. As early as 1893, a suit for the recovery of state and county taxes was brought under section 3804, as it then read, against the county as sole defendant. This court, noting that there was no allegation in the complaint that the state had received any portion of the tax, declined to uphold the contention, raised by demurrer, that the state was a necessary party. (*Hayes* v. *County of Los Angeles*, 99 Cal. 74 [33 Pac. 766].) Illustrative of a suit under special statute brought by the county as sole party plaintiff to recover unsecured personal property taxes levied on its own behalf and that of the city and school districts, is *County of Los Angeles* v. *L. A. Junk Co.*, 8 Cal. App. (2d) 136 [47 Pac. (2d) 309]. In *County of San Diego* v. *Croghan*, 2 Cal. App. (2d) 494 [38 Pac. (2d) 474], where taxes collected for several entities by county officials had been embezzled by a county officer, it was held that the county,

without joining the other entities concerned, might properly sue the defaulting officer and his bondsman. Apparently no difficulty was experienced in bringing these past controversies to a complete determination with the county as sole party plaintiff or defendant. So far as refunds are concerned, if the absent entities suffered prejudice by this long established procedure, they were strangely lax in pressing the point.

 While a course of administrative procedure, or an administrative construction of a statute, does not acquire legal sanction merely by reason of long usage, it will be accorded great respect by the courts, and will be upheld, if not clearly erroneous. (*Bodinson Mfg. Co. v. California Emp. Com.*, *ante*, p. 321 [109 Pac. (2d) 935]; *Carter v. Commission on Qualification, etc.*, 14 Cal. (2d) 179, 185 [93 Pac. (2d) 140], and cases cited.) Here the administrative conception of section 3804 as contemplating a defense by the county of actions for tax refunds is clearly correct. While, as above noted, the statute does not expressly designate who shall be the party or parties defendant to such an action, its provisions as a whole, setting up a complete system for the handling and payment of refunds by county officers, and for recoupment from appropriate funds of other entities, admit of no other construction than that the county is thereby authorized to appear and defend suits for refund on behalf of those other entities whose taxing functions have been transferred to and consolidated with those of the county, and whose adoption of the county system has included the assessment and collection of taxes and the refund procedure. There is nothing in this construction of the statute which renders it unconstitutional under section 13 of article XI of the Constitution of this state, particularly when that section is read in the light of sections 6 and 8 of the same article.

 The city argues that even if it be conceded that in adopting the county tax system, it also adopted the county refund procedure, it did not and constitutionally could not have delegated to the county its right to appear and defend itself against suit. The answer to this argument is that regardless of whether the city, as a city, would have had power to delegate its right, the delegation was in fact made, either directly or impliedly, by virtue of the terms of the statute, at the time the city availed itself of the privilege of consolidating its

taxing function with the county system. One governmental agency may properly be so empowered to perform functions for another. Such a joint exercise of powers was upheld in the late case of *City of Oakland* v. *Williams,* 15 Cal. (2d) 542 [103 Pac. (2d) 168].

But, even so, the city contends, the scope of the delegation is defined by pertinent ordinance and charter provisions and it cannot exceed the limits thus specified. Therefore, citing section 342 of the charter, which in part declares, *"Until otherwise provided by ordinance,* the city shall continue to use" the county system, the city points out that on December 5, 1936, there became effective Ordinance 77,155, which expressly provided that all suits for the refund of city taxes should be "brought against the city" and "be defended by the city attorney", and that the prior transfer, if any, to the county of any such power or function was revoked. Even if it be conceded, says the city, that in 1925, when the charter was adopted, charter sections 342 and 2(11)t adopted Political Code, section 3804, in its entirety, and ordinances passed pursuant thereto effected a complete transfer of the taxing function, then by the same token and under the same charter sections, the scope of the transfer was limited and the delegation previously made, if any, of the right to appear and defend refund suits was withdrawn by the enactment of Ordinance 77,155. It will be noted that the ordinance took effect subsequent to the tax collections and tax years here involved, without retroactive operation which would affect the status of the parties to the tax actions here in question. Moreover, it is extremely doubtful that the remedy afforded by section 3804 can validly be curtailed by city ordinance.

No authority is cited which would sanction a partial consolidation and partial acceptance by the city of the county taxing system, permitting the city to avail itself of all advantages of the transfer and at the same time, if it so elects, to reject all disadvantages and relieve itself of all burdens not to its liking. The transfer to and assumption by the county of the city taxing functions imports a full consolidation and an acceptance by the city of the statutory scheme setting up and regulating the county system. Any other method would hamper the county officers in their execution of city functions. It would also lead to confusion and injustice in dealings with taxpayers, who are confronted with a

combined tax roll calling for payment of a single sum covering both county, city and school district taxes, without any inkling of varying rights and regulations of the several entities concerned. The city therefore should not be permitted, by charter and ordinance provisions, to limit the powers and duties of the county in relation to taxpayers. When the city adopted the county system, and the county officers assumed the city functions, the city must be held to have necessarily accepted the county system, charged with all the incidents thereof created by valid statutory and constitutional provisions applicable to county assessment, collection, and refund of taxes, including the right on the part of the county to make refunds in proper cases without approval of the city, and to defend refund suits, pay judgments, and secure reimbursement under the recoupment provisions incorporated in section 3804.

The contention is made by petitioners, and argued under five or more subdivisions of their joint brief, that the county is without interest in the litigation because the only delegation of functions authorized by the constitutional, statutory, charter, and ordinance provisions, is a delegation to "county officers", as distinguished from the "county" as an entity. For example, article XI, section 6, of the Constitution authorizes the performance by "county officers" of transferred municipal functions, and section 3804 provides for refunds and recoupment by the county treasurer on order of the board of supervisors. In executing the delegated functions, it is said, the county officers do not represent the county, but act solely as *ex officio* officers of the city or other entity which has made the transfer, and they are subject to its charter, ordinance, and regulatory enactments. Therefore, according to petitioners, the county is not a necessary party defendant to a refund suit; neither are the collecting officers who have paid over the tax funds to the entity on whose behalf they were collected, i. e., county officers acting as *ex officio* officers of the city or other entity (*Sheehan* v. *Board of Police Commrs.*, 188 Cal. 525 [206 Pac. 70]; *Hartford Fire Ins. Co.* v. *Jordan*, 168 Cal. 270 [142 Pac. 839]; *Craig* v. *Boone*, 146 Cal. 718 [81 Pac. 22]; *Spencer* v. *City of Los Angeles*, 180 Cal. 103 [179 Pac. 163]; *Elberg* v. *County of San Luis Obispo*, 112 Cal. 316 [41 Pac. 475, 44 Pac. 572]; *Pacific Mutual Life Ins. Co.* v. *County of San Diego*, 112 Cal. 314 [41 Pac. 423,

44 Pac. 571] ; *Madary* v. *City of Fresno,* 20 Cal. App. 91 [128 Pac. 340]) ; but the only proper and indispensable parties are the taxing entities.

True it has been held that where a public officer is declared by law by virtue of his office to be also, *ex officio,* the incumbent of another public office, the two offices are distinct and separate (*Union Bank & Trust Co.* v. *Los Angeles Co.,* 2 Cal. App. (2d) 600 [38 Pac. (2d) 442), and it was declared in the early case of *Madary* v. *City of Fresno, supra,* that in discharging taxing functions for other entities, county officers ''become or are *ex officiis* officers'' of the respective entities. The fact, however, that the offices so held are separate and distinct does not bar the officers from acting in a dual capacity, and, if such is the case, from representing more than the one entity at the same time. That such a dual representation occurs where taxing functions are delegated to county officers was brought out clearly in the cases of *Pomona City School Dist.* v. *Payne,* 9 Cal. App. (2d) 510 [50 Pac. (2d) 822], and *City of Fullerton* v. *County of Orange,* 140 Cal. App. 464 [35 Pac. (2d) 397].

In the latter case the city sued the county for the recovery of certain funds representing tax penalties and interest collected by county officers exercising delegated city taxing functions, which funds had been diverted by the officers to the county treasury, without remittance to the city. In discussing the status of the officers and the funds, and the applicability of the statute of limitations, the court said: ''In some states the duty of collecting taxes for municipalities of certain classes is performed by county officers. When the county officers act in this capacity for a city they are *ex officiis* officers of that city. (*Madary* v. *City of Fresno,* 20 Cal. App. 91 [128 Pac. 340].) They become, by law, the agents of the city to collect the taxes for the city. *They do not lose their identity as county officers. Although they act for the city, they are county officers, performing a county function imposed upon them by law.* The trial court in the case of *City of Centerville* v. *Turner County,* 23 S. D. 424 [122 N. W. 350], found, upon facts quite similar to the instant case, that the defendant county 'is made by law the agent of the plaintiff to collect, and enforce the collection of, the said taxes, and the relationship existing between the plaintiff and

defendant is a fiduciary one, and the said taxes when so collected by the county became, and is, a trust fund in the possession of the said county acting as a trustee of an express trust.' . . . The primary object of the statute, which authorized the defendant county to collect the taxes for the City of Fullerton and other cities, is to provide a means whereby the work and expense of collecting taxes by city officers may be eliminated. (*Moore* v. *City of San Diego,* 90 Cal. App. 242 [265 P̱ac. 864].) The work done by the county officers is paid for by the city, not to the officers performing the services, but to the county itself. The county officers when performing under the provisions of the statute are, as we have indicated, performing a county function for which the county receives payment from the city. The relationship existing between the county and city is an implied or constructive trust, an involuntary trust arising by operation of law, and the county is entitled to claim the benefit of the statute of limitations.''

In *Pomona City School Dist.* v. *Payne, supra,* plaintiff school district sought a writ of mandate commanding the Los Angeles County auditor and treasurer to allow it credit for bank interest earned by district funds in the custody of the county treasury. Directing entry of a judgment for plaintiff, the court said: ''Defendants emphasize the language of the statute that the interest earned shall belong to and shall be paid into the fund of the public body 'represented by the officer making such deposit'. The money is deposited by the county treasurer. It is pointed out, therefore, that the interest belongs to the county, being the public body 'represented by' the county treasurer who made the deposit. This is too narrow a construction of the words 'represented by'. Certainly the county treasurer, as custodian of school funds, 'represents'—i. e., 'exercises power derived from another' (*Davis* v. *Davis,* 26 Cal. 23 [85 Am. Dec. 157])—the school district whose funds are in his care, and acts as its agent, and is *ex officio* treasurer for the school district. . . . The reasonable and equitable rule is that the county is simply the agent of the school district, the bailee or trustee of the funds deposited in its care, and as such bailee and trustee it cannot allocate to itself, nor enrich its own coffers with, the interest increments upon the money placed in its custody by its bailor and trustor.''

The above authorities not only answer completely petitioners' contention that when county officers take on the role of *ex officio* officers of another entity, they shed their status as representatives of the county, but also petitioners' further contention that under section 3804 no recoupment is provided to the "county" as such, and the funds of the entities are never actually in possession of the "county", but only of the "county officers". In the consolidation of taxing functions, the county officers do not lose their identity as such by holding, *ex officio*, the other public offices thrust upon them, but they act in a dual capacity, and through them the county becomes the bailee or trustee of tax funds of other entities deposited in its treasury. By the same token the county, through its said officers, is empowered by section 3804 to make refunds, to receive the benefit of the recoupment provisions, and to defend actions for refund.

The cases of *Pacific Mutual Life Ins. Co.* v. *County of San Diego, supra,* and *Elberg* v. *County of San Luis Obispo, supra,* strongly relied upon by petitioners, are not controlling. Those actions for refund were brought pursuant to section 3819, which at the time provided no method by which the county could secure reimbursement for repayments made to taxpayers. Therefore it was held that in such situation it would be manifestly unjust to allow a recovery against the county, and the county was not a proper party defendant. *Madary* v. *City of Fresno, supra,* also cited by petitioners, is not in point. That was a suit for refund brought against the city, not an action under section 3804, *supra.* The question of whether the plaintiff might have had a right of action against the county or joined the county as a party defendant was not determined.

For purposes of this proceeding, it is only necessary to determine whether a cause of action lies against the county which may be fully determined without the presence of or prejudice to the rights of other entities concerned. Questions respecting the extent of the county's liability, if any, or the claimants' right to proceed directly against the entities, or the latter's right to intervene, are not involved. ■ But nevertheless it may be noted that were it not for the relief sanctioned by section 3804, no suit for refund could be maintained against the county as a collecting agent or representative of the entities, unless such suit were commenced before

the remittance to the respective entities of the moneys collected for them, for obviously the county could not be required to pay refunds for the entities out of its own funds. (*Spencer* v. *City of Los Angeles, supra,* at page 117; *Craig* v. *Boone, supra.*) It would appear, therefore, that in an action against the county under section 3804, the recoupment provisions merge in and become part of any judgment allowing a refund, regardless of whether the language of the judgment is general in scope or expressly incorporates the terms of the statute. In short, the effect of the statute is simply to authorize the county, where there has been a consolidation of taxing functions, to defend actions for refund both on its own behalf and as the *alter ego* of the entities affected by the refunding claim. So far as the county is concerned such a controversy may be completely determined without the presence of other entities or prejudice to their rights.

The alternative writ is discharged, and a peremptory writ is denied.

Shenk, J., Curtis, J., Thompson, J., *pro tem.,* and Tuttle, J., *pro tem.,* concurred.