[No. B147589. Second Dist., Div. Eight. May 15, 2002.]

LANCE W. STOKES, Plaintiff and Respondent, v.
CALIFORNIA HORSE RACING BOARD, Defendant and Appellant.

478

**COUNSEL**

Bill Lockyer, Attorney General, Silvia M. Diaz and Thomas Scheerer, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of Jay M. Coggan and Jay M. Coggan for Plaintiff and Respondent.

## OPINION

**BOLAND, J.—**

### SUMMARY

Appellant California Horse Racing Board appeals from a judgment granting a writ of mandate. The judgment set aside a board order suspending a licensed trainer, respondent Lance W. Stokes, who had entered a horse in two races for which the horse was not eligible. We conclude the board was authorized to suspend a licensed trainer for entering a horse in races for which the horse was ineligible, without evidence the trainer acted knowingly or willfully, on the theory that the trainer was responsible for the acts of his agents.

### FACTUAL AND PROCEDURAL BACKGROUND

Stokes is a trainer licensed by the California Horse Racing Board. He trained a horse named Devil's Mistake, and entered the horse in two races—on August 15 and September 18, 1999—at Los Alamitos. The rules at Los Alamitos require a horse to work out on the racetrack—referred to as a "work"—at least once within the 30 days preceding a race. Stokes delegated to his brother, Heath Stokes, also a licensed trainer, the responsibility for arranging the horse's workouts. However, instead of working Devil's Mistake during the 30-day period preceding each race, Heath worked a different horse he misidentified as Devil's Mistake. Devil's Mistake ran and won the horse race at Los Alamitos on August 15. However, he fractured his knee during the September 18 race and was euthanized. A subsequent investigation and review of videotapes showed Devil's Mistake was not worked as required before either race and was therefore ineligible to run in the races.

Stokes was charged with violating several rules of the California Horse Racing Board (Board). Administrative hearings were held before the Board of Stewards (Stewards) in December 1999 and January 2000.[1] The Stewards issued a ruling on February 17, 2000, suspending Stokes for 90 days and

---

[1]The Stewards for a race meeting are appointed by the Board and have general authority and supervision over all licensees at the race meeting, including authority to suspend and fine licensees. (Cal. Code Regs., tit. 4, §§ 1525, 1527, 1528.)

imposing a fine of $1,000. The Stewards concluded that the qualifying rules for the race meeting were breached in violation of rule 1588.[2] The Stewards found Stokes, as the trainer, was responsible for qualifying the horse to run in a race (rule 1692);[3] the workout rule was violated because the trainer permitted the misidentification of the horse that actually engaged in the workout (rule 1878);[4] and Stokes's conduct was detrimental to horse racing (rule 1902).[5]

Stokes appealed the Stewards' ruling, which was stayed pending a final decision. Stokes argued the ruling was based on an inappropriate "strict liability" theory. As a trainer, he claimed he was responsible only for the horse's fitness to run in a race, not for qualifying it. Additionally, he argued there was no evidence he was aware that a different horse would engage in the workout, and rule 1902 proscribes only intentional conduct.[6]

The administrative law judge (ALJ) sustained the Stewards' ruling. The ALJ concluded "the trainer is in charge of the horse and thus in charge of qualifying it for the race." The ALJ stated any other interpretation of rule 1692—which requires the qualification of each horse for a race—would "result in no one being responsible for the eligibility of the horse to compete in the race, and would therefore nullify the provision of rule 1592 that 'the stewards may discipline anyone responsible' for the running of an ineligible

---

[2]Rule 1588 provides in part: "[A] horse is ineligible to start in any race . . . [¶] . . . [¶] (g) Unless he is eligible to enter said race and is duly entered for such race." (Cal. Code Regs., tit. 4, § 1588.)

[3]Rule 1692 provides in part: "Each horse starting in a race must be qualified for that race, ready to run, in physical condition to exert its best effort, and entered with the intention to win. Each trainer having the care or custody of such horse warrants it is fit to participate when brought to the paddock. Such trainers shall be present at the paddock to supervise the saddling of the horse and shall give instructions to assure the best performance of the horse." (Cal. Code Regs., tit. 4, § 1692.)

[4]Rule 1878 states: "No trainer shall permit a horse in his charge to be taken onto the track for training or a workout except during hours designated by the association, and a trainer desiring to engage a horse in a workout shall prior to such a workout identify the horse by name when requested to do so by the stewards or their authorized representative." (Cal. Code Regs., tit. 4, § 1878.)

[5]Rule 1902 provides in part: "No licensee shall engage in any conduct prohibited by this division nor shall any licensee engage in any conduct which by its nature is detrimental to the best interests of horse racing . . . ." (Cal. Code Regs., tit. 4, § 1902.) Detrimental conduct includes, but is not limited to, listed items such as knowing association with known bookmakers, indictment for a crime involving moral turpitude, and so on. (*Id.*, subds. (a), (b) & (c).)

[6]Stokes's brother, Heath Stokes, was also disciplined with a 180-day suspension and a fine of $2,000. The Stewards found Heath Stokes violated the same four rules as Lance Stokes and he "willfully disregarded" the rule on workouts. Heath did not appeal to the Board.

horse."[7] The ALJ found no evidence Stokes knew or approved of his brother's substitution of another horse at the workouts in place of Devil's Mistake, or knew Devil's Mistake was ineligible for the races. The ALJ observed, however, the workouts were arranged by telephone calls to the official clocker, "presumably by the appellant's agent, Heath D. Stokes," in which the horse to be worked was represented as Devil's Mistake, "and [Stokes's] agent, Heath D. Stokes, caused a different horse to be worked." Finally, the ALJ rejected the argument that rule 1902 on its face applies only to intentional conduct, and concluded there was no cause to overrule the Stewards' ruling.[8] The Board adopted the ALJ's proposed decision effective July 31, 2000.

Stokes filed a petition for a writ of mandate on August 11, 2000, and the court stayed operation of the Board's decision. Stokes presented the same arguments to the court that he made unsuccessfully to the Board. Stokes also argued the ALJ improperly found he violated a rule—rule 1592, authorizing the Stewards to discipline anyone responsible for entering an ineligible horse—as to which the Stewards made no finding.

The trial court granted Stokes's petition by minute order entered November 13, 2000, stating: "Moving party grounds. Based on findings of the Board, it is abuse of discretion to hold petitioner liable." Judgment was entered on November 30, 2000, and the Board filed a timely notice of appeal.

## DISCUSSION

■ The Board did not abuse its discretion in disciplining Stokes. Rule 1592 authorizes the Board to discipline "anyone responsible" for entering or starting a horse in a race for which the horse is ineligible. (Cal. Code Regs., tit. 4, § 1592.) The horse's trainer is responsible for entering horses in races. (*Id.*, § 1894.)[9] A horse starting in a race "must be qualified for that race, ready to run, in physical condition to exert its best effort, and entered with the intention to win." (*Id.*, § 1692.) The trainer is also responsible for identifying a horse prior to a workout. (*Id.*, § 1878.)

---

[7]Rule 1592 provides that "[a]ny horse ineligible to be entered for a race, or ineligible to start in any race, who competes in such race may be disqualified and the stewards may discipline anyone responsible therefor." (Cal. Code Regs., tit. 4, § 1592.)

[8]The Board may overrule a steward's decision "if a preponderance of the evidence indicates any of the following: [¶] (1) The steward mistakenly interpreted the law. [¶] (2) New evidence of a convincing nature is produced. [¶] (3) The best interests of racing and the state may be better served." (Bus. & Prof. Code, § 19517, subd. (a).)

[9]Rule 1894 states in part: "Trainers are responsible for the condition of horses in their care and are presumed to know the rules. A trainer represents the owner relative to horses which he is training in the matter of entries, declarations, and the naming of jockeys or drivers . . . ." (Cal. Code Regs., tit. 4, § 1894.)

Stokes makes the same arguments he made to the Board and the trial court, principally that he cannot be held liable for unknowingly allowing his brother to violate the rules.[10] We disagree.

A trainer cannot disclaim responsibility for the performance of his duties merely because he assigns a task to another—whether a brother, an employee, or anyone else—who fails to properly perform the task. An innocent principal or employer is liable for the torts committed by an agent or employee while acting within the scope of the agency or employment, even if the agent or employee acts in excess of the authority or contrary to instructions. (2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 115, p. 109.) We discern no reason for not applying a similar rule here. ■ A licensee engaged in a regulated enterprise such as horse racing and pari-mutuel betting, whose license is subject to suspension or revocation for violation of any applicable rule or regulation, must necessarily be held responsible for the acts of an agent or employee. Any contrary conclusion would be anomalous, particularly in the context of a regulatory system designed to protect the wagering public. ■ Moreover, the Board's interpretation of its own rules is entitled to deference. (See *Los Angeles v. Superior Court* (1941) 17 Cal.2d 707, 712 [112 P.2d 10] [course of administrative procedure or administrative construction of a statute is accorded great respect by the courts and is upheld unless clearly erroneous].)

■ Stokes argues he did not receive a fair hearing before the Board. While rule 1592 was cited as authorization for disciplining Stokes, he contends the Stewards did not find he violated rule 1592. Stokes is mistaken. The complaint filed against Stokes specifically cited rule 1592, and the rule merely authorizes the Stewards to discipline "anyone responsible" for entering an ineligible horse. Other rules render the trainer responsible. The complaint clearly advised Stokes of the charges against him.[11] Moreover, the Stewards' findings specifically stated they were authorized to sanction

---

[10]Stokes also argues he did not violate rule 1588 (a horse is ineligible to start in a race unless he is eligible to enter and duly entered) or rule 1692 (requiring each horse starting in a race to be qualified for the race, etc.). The substance of Stokes's argument is that these rules apply only to the horse, and that the trainer cannot be disciplined when these rules are violated. The ALJ and the Board properly refused to adopt Stokes's interpretation of these rules.

[11]The offense alleged was described in the complaint as follows: "On the dates of August 13 and September 16, 1999, Trainer Lance Stokes directed his brother Trainer Heath Stokes to obtain qualification works for a horse purporting to be 'Devil's Mistake.' Lance failed to insure that the proper horse qualified on both occasions, giving Lance an unfair advantage. 'Devil's Mistake,' in accordance with the conditions of the meet, did not obtain a qualification work within 30 days of its participation in races at Los Alamitos Race Course on August 15 and September 18, 1999. Lance warranted that the horse was qualified to race on both dates, when in fact it was ineligible to start. Such conduct is detrimental to horse racing."

Stokes under rules 1692 and 1592. Stokes's claim the Board improperly used a rule the Stewards did not employ is without merit.

Finally, Stokes argues that rule 1902, which prohibits licensees from engaging "in any conduct prohibited by this division" or "any conduct which by its nature is detrimental to the best interests of horse racing," (Cal. Code Regs., tit. 4, § 1902) requires intentional, not merely negligent, conduct. Because Stokes cites no authority for that argument, we decline to endorse it.[12]

Accordingly, the Board acted within its discretion in disciplining Stokes, and the trial court erred in concluding otherwise.

### DISPOSITION

The judgment is reversed. The trial court is directed to deny the petition for writ of mandate. The Board is to recover its costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

On June 12, 2002, the opinion was modified to read as printed above.

---

[12]Both parties also argue about rule 1887, which makes the trainer "the absolute insurer of and responsible for the condition of the horses entered in a race, regardless of the acts of third parties," and permits a trainer to be disciplined if tests of the horse show the presence of any prohibited drug. (Cal. Code Regs., tit. 4, § 1887, subd. (a).) These arguments are irrelevant; rule 1887 was not charged and has no application in this case.