[Civ. No. 10714.   Second Appellate District, Division Two.—February 28, 1936.]

MINNIE GOULD et al., Respondents, v. WESTERN DAIRY PRODUCTS, INC., et al., Appellants.

Jennings & Belcher and Louis E. Kearney for Appellants.

Claud B. Andrews and Rodney L. Williams for Respondents.

WOOD, J.—This action was commenced by the heirs of Albert T. Gould, who was killed May 14, 1934, in an automobile accident at the intersection of Lake and Alameda Streets in the city of Burbank, to recover damages resulting from his death. A jury trial was conducted before Judge William S. Baird and a verdict was returned in favor of defendants. A motion for a new trial was heard by Judge Emmet H. Wilson during the absence from the state of Judge Baird. Judge Wilson granted the motion "on the ground of errors in law occurring at the trial and excepted to by the plaintiffs". Defendants have appealed from the order granting a new trial.

■ Boulevard stop signs of the type referred to in the California Vehicle Act had been erected at the intersection in question in 1927 under the direction of the board of police commissioners of Burbank and were in place at the time of the accident. The only eye-witness, defendant Borgquist, driver of the other car involved, testified that decedent did not stop his car at the intersection. An ordinance of the city of Burbank was introduced in evidence providing in part as follows: "The Board of Police Commissioners is hereby authorized and required to place and maintain, or cause to be placed and maintained upon such street or streets as in its opinion shall be deemed advisable at or near the property line of the boulevard, appropriate signs upon such street or streets, or devices or marks in the roadway, such signs, devices or marks to bear the word 'Stop' or the words, 'Boulevard Stop' in such position and with letters of a size to be clearly legible from a distance of fifty feet (50) along the street or streets intersecting such boulevard. Such streets or intersections, when the signal, device or marks are placed and maintained by the Board of Police Commissioners, as in this section above provided, shall be considered as boulevard stop intersections or boulevard stop streets, as the case may be. Every operator of a vehicle or street car traveling any boulevard stop intersection or boulevard stop street shall bring such vehicle or street car to a full stop at the place where such street meets the prolongation of the near property line of such boulevard."

The trial judge instructed the jury in part as follows: "If you find from the evidence that Albert Gould violated the

provisions of this ordinance, as just read to you, then I instruct you that the said Albert Gould was guilty of negligence as a matter of law; and if such negligence, if any, proximately contributed in any degree, however slight, to the happening of the accident and the injuries resulting in his death, then the plaintiffs cannot recover and your verdict must be in favor of the defendant.'' In upholding the order granting the new trial plaintiffs contend that the instruction was erroneous for the reason that the legislative body of the city of Burbank did not designate the intersection in question as a place for a boulevard stop but left to the police commissioners the matter of determining which intersections should be so designated.

If it was the legal duty of decedent to make the boulevard stop, the instruction was correct and the order granting the new trial was erroneous. In *Borum* v. *Graham,* 4 Cal. App. (2d) 331 [40 Pac. (2d) 866], the defendant's automobile injured plaintiff, a pedestrian, while she was crossing the street in a painted crosswalk. An ordinance of the city of Pasadena was received in evidence, by which it was made unlawful for a vehicle to be driven onto any crosswalk marked as provided in section 5 thereof while a pedestrian was walking on certain parts of the crosswalk. The court upheld the right of the legislative body of Pasadena to delegate to administrative officials the power to determine which intersections should be marked. We quote: ''Section 5 provided that the chief of police, subject to the approval of the city manager, was authorized to mark crosswalks equal in width to the adjacent sidewalks, by appropriate devices, marks or white lines on the surface of the roadway at all intersections where in his opinion there is particular danger to pedestrians crossing the roadway. Pursuant to this section the chief of police had marked pedestrian crosswalk white lines across Colorado street at its intersection with South Broadway, but greater in width than the adjacent sidewalk, which excess of width we deem immaterial herein. There was some question raised by appellant at to the failure of proof of the securing of approval thereof by the city manager. Such approval must be deemed proven, in the absence of evidence to the contrary, by the presumption of law that official duty has been performed by the officer charged therewith. (Sec. 1963, subd.

15, Code Civ. Proc.) Appellant also claims that section 5 of the ordinance contained a delegation of legislative power to the chief of police. The function of the chief of police was administrative, not legislative. For the proper enforcement of its ordinance the city legislative body may delegate a power to an officer to determine some facts or state of things upon which the ordinance makes or intends to make its own action depend. (*In re McLain*, 190 Cal. 376 [212 Pac. 620].) We conclude, therefore, that section 5 of the ordinance was a valid enactment.''

The right of legislative bodies to delegate power to administrative officials to determine facts in carrying out provisions of legislative enactments has been upheld in many cases. In *Carter* v. *Stevens*, 211 Cal. 281 [295 Pac. 28], a forceful opinion by Mr. Justice Henshaw delivered in *Gaylord* v. *City of Pasadena*, 175 Cal. 433 [166 Pac. 348], is quoted with approval. ''Even a casual observer of governmental growth and development must have observed the ever-increasing multiplicity and complexity of administrative affairs—national, state, and municipal—and even the occasional reader of the law must have perceived that from necessity, if for no better grounded reason, it has become increasingly imperative that many *quasi*-legislative and *quasi*-judicial functions, which in smaller communities and under more primitive conditions were performed directly by the legislative or judicial branches of the government, are intrusted to departments, boards, commissions, and agents. No sound objection can longer be successfully advanced to this growing method of transacting public business. These things must be done in this way or they cannot be done at all, and their doing, in a very real sense, makes for the safety of the republic, and is thus sanctioned by the highest law. For, as the Supreme Court of the United States declares: 'Indeed, it is not too much to say that a denial to Congress of the right, under the Constitution, to delegate the power to determine some fact or the state of things upon which the enforcement of its enactment demands, would be ''to stop the wheels of government'' and bring about confusion, if not paralysis, in the conduct of the public business.' (*Union Bridge Co.* v. *United States*, 204 U. S. 364 [27 Sup. Ct. 367, 51 L. Ed. 523].)''

Following the ruling of *Borum* v. *Graham* (*supra*), we must conclude that the city of Burbank had the right to delegate

to the board of police commissioners the power to determine which intersections should be designated as boulevard stop intersections. The right to delegate the power to determine which crosswalks should be marked as safety crosswalks is substantially the same as the right to delegate the power to determine the locations of boulevard stop signs. Plaintiffs argue that since the matter of marking crosswalks is not covered by the California Vehicle Act it is a matter upon which the city of Pasadena was free to legislate, whereas the matter of placing boulevard stop signs is covered to some extent by the California Vehicle Act. They also argue that the legislative body of the city has been given the power by the California Vehicle Act to designate which intersections shall be considered as boulevard stop intersections and therefore this delegation of power could not be passed on to administrative officials. This argument is not sound. If the city had the power to delegate in the one case by the same reasoning it had the power to delegate in the other case. Moreover, the power to enact an ordinance on the subject was not received from the California Vehicle Act but rather the power to legislate on the subject was one of the powers of the city of Burbank which it retained unless that power was taken away by the enactment of the California Vehicle Act. Section 145 of the California Vehicle Act as in force at the time of the accident, is in part as follows: "Nothing in this act contained shall be so construed as to prevent boards of supervisors in their respective counties and the legislative bodies of incorporated cities from providing by ordinance for the regulation of traffic by means of traffic or crossing officers or semaphores or other signalling devices on any portion of the public highways where the traffic is heavy and continuous, nor from designating certain public highways as boulevards nor from designating certain intersections of public highways and requiring that all vehicles shall be stopped before entering or crossing such boulevards or at one or more entrances to any designated intersection of public highways." It will be noted that the city of Burbank was not given the power in the California Vehicle Act to enact the ordinance in question but rather the power in the city to enact the ordinance was especially recognized and preserved by the California Vehicle Act.

Our disposition of the main contention of defendants makes it unnecessary to pass upon their additional contentions that the intersection in question, having been maintained as a boulevard stop intersection for seven years under the circumstances shown, was a *de facto* boulevard stop intersection, that regardless of the validity of the ordinance it was the plain duty of decedent to bring his automobile to a stop; and that in any event if decedent did not stop his car he was clearly guilty of negligence, from which it is argued that the plaintiffs suffered no prejudice by the giving of the instruction under discussion.

The jury was given other instructions which are criticized by the plaintiffs. The reasons given above for upholding the quoted instruction are applicable to the other instructions which are claimed to be erroneous.

The order granting a new trial is reversed.

Crail, P. J., and McComb, J., *pro tem.*, concurred.