[S. F. No. 17224. In Bank. Dec. 9, 1947.]

B. G. JOHNSTON, Respondent, v. BOARD OF SUPERVISORS OF MARIN COUNTY et al., Defendants and Appellants; VITO B. ALIOTO, Intervener and Appellant.

A. E. Bagshaw, District Attorney, Harold Jos. Haley, Deputy District Attorney, and Natalie J. Holly for Defendants and Appellants.

George Olshausen for Intervener and Appellant.

Paul S. Marrin, Howard C. Ellis and Sterling Carr for Respondent.

TRAYNOR, J.—This action was brought by a resident and taxpayer of Marin County to restrain the members of the board of supervisors of that county from issuing to the Benicia Food Products Company a use permit to construct and operate a fish cannery and reduction plant within an unincorporated part of the county. The plaintiff also sought an injunction against the members of the board to restrain them from adopting an ordinance that allegedly authorized the construction and maintenance of the proposed plant in this area. Defendants, the members of the board of supervisors, and interveners, Benicia Food Products Company, and Vito B. Alioto, appeal from an order pendente lite enjoining the issuance of the use permit and the enactment of the ordinance.

The injunction was issued on the basis of plaintiff's complaint, the substance of which follows. The Benicia Food Products Company filed an application with the Marin County Planning Commission for a permit to construct and operate a fish cannery and reduction plant in an unincorporated part of Marin County, located about one mile from plaintiff's residence. Plaintiff alleges that the operation of the proposed plant in that area would pollute the air with offensive odors and contaminate the waters surrounding plaintiff's property. Although the proposed site for the plant is in an area zoned for heavy industry, the local zoning ordinance (Ordinance 264 of Marin County) provides that a use permit must be obtained before any fish reduction plant may be constructed or operated in such area.

The commission held a hearing on the application for a use permit, and Mrs. Natalie Holly, wife of R. A. Thompson, a member of the Marin County Board of Supervisors, appeared

as attorney for the applicant. After the hearing, the commission voted to deny the application and transmitted its report to the board of supervisors. The report was considered by the board of supervisors at a public meeting, at which Mrs. Holly again represented the applicant. At this meeting, Supervisor Thompson submitted a proposed ordinance entitled, "An ordinance . . . regulating the establishment, maintenance and operation of reduction plants . . . and repealing all conflicting ordinances and parts of ordinances." Without submitting the proposed ordinance to the Marin County Planning Commission, the board then voted to adopt it by a vote of three to two. Supervisor Thompson then made a motion that the board reject the report of the planning commission and grant the application of the Benicia Food Products Company for a use permit. This motion was likewise carried by a vote of three to two. A supervisor voting against the proposed ordinance and against the use permit gave notice immediately after the vote on each measure that under parliamentary rules of order he elected to change his vote, and made motions for reconsideration of each matter at the next meeting.

Plaintiff filed the complaint before the next scheduled meeting of the board of supervisors, and the trial court issued a temporary restraining order and an order to show cause why an injunction pendente lite should not be issued. The ground on which plaintiff sought an injunction against enactment of the proposed ordinance was that the ordinance would be invalid because it was not submitted to the planning commission for a report as required by the provisions of the State Planning Act (Stats. 1929, p. 1811, § 9, as amended; 2 Deering's Gen. Laws, 1944, Act 5211b) and section 21, Ordinance 264 of Marin County. The injunction restraining the board of supervisors from issuing the use permit was sought on two grounds: (1) that under the provisions of ordinance 264, such a permit could be granted only on affirmative action of both the planning commission and the board of supervisors; and (2) that Supervisor Thompson was disqualified from participating in any action that the board of supervisors might take with respect to the application for a use permit.

The Benicia Food Products Company and Vito B. Alioto, a part owner of the company, were joined as defendants along with the members of the board of supervisors. The

company, Alioto, and Supervisor Thompson, jointly filed a demurrer and an answer. The grounds of the demurrer were that the complaint failed to state facts constituting a cause of action; that the complaint contained a misjoinder of two causes of action; and that two causes of action were not separately stated. The other members of the board of supervisors filed a general demurrer. The trial court dismissed the action as to the Benicia Food Products Company and Alioto and granted them leave to appear as interveners. They thereupon rested their opposition to the injunction on the demurrer and answer previously filed. The demurrers were overruled, and after hearing on the order to show cause, the trial court issued an injunction pendente lite restraining the members of the board of supervisors "from (a) issuing or causing to be issued any Use Permit, or any permit, pursuant to the application of said Benicia Food Products Company, filed as set forth in the complaint on file herein before the Planning Commission of the said County of Marin . . ., and (2) from publishing said purported Ordinance likewise referred to in said complaint on file herein, or taking any steps to bring said Ordinance into existence or effect. . . ."

Defendants and interveners, hereinafter collectively referred to as defendants, have appealed from this order on the following grounds: (1) the injunction is erroneous in that it restrains the board of supervisors from taking legislative action; (2) the board of supervisors had power to issue the use permit in question after the denial thereof by the planning commission; (3) Supervisor Thompson was not disqualified from participating in any action with respect to the issuance of the use permit; (4) the injunction is excessive in any event, because it enjoins the construction of a fish cannery as a nuisance. Defendants on appeal have not relied on the alleged misjoinder of causes of action or failure to state two alleged causes of action separately. Those contentions may therefore be regarded as waived. (*Title G. & T. Co.* v. *Fraternal Finance Co.*, 220 Cal. 362, 363 [30 P.2d 515]; *Mayne* v. *San Diego Electric Ry. Co.*, 179 Cal. 173, 179 [175 P. 690].) In any event, if the complaint is deficient in these respects, there is nothing to indicate that defendants were in any way prejudiced thereby. (Cal. Const., art VI, § 4½; *Tobin Grocery Co.* v. *Spry*, 204 Cal. 247, 250 [267 P. 694]; cases collected 2 Cal.Jur. 1010, § 601.)

 The contention that the injunction erroneously restrains legislative action by the board of supervisors is meri-

torious. The temporary restraining order was issued after action on the proposed ordinance was delayed by the motion for reconsideration. The temporary injunction pendente lite, by ordering the board of supervisors to refrain from either publishing the ordinance or taking any steps to bring such ordinance into effect, clearly interfered with the legislative action of the legislative body of the county. Regardless of whether the action of the board of supervisors would be valid, such an injunction is not the proper remedy in this case.

██ Plaintiff contends that there is an exception to the general rule or judicial noninterference with the legislative action of a county board of supervisors (*Nickersen* v. *San Bernardino County*, 179 Cal. 518, 522 [177 P. 465] ; cases collected 140 A.L.R. 439, 440) when the board is about to adopt an ordinance in excess of its jurisdiction. (See *Glide* v. *Superior Court*, 147 Cal. 21, 23 [81 P. 225].) Even if it be assumed that the contemplated action would be in excess of the board's jurisdiction in this case, any authority that a court might have to enjoin such action is qualified by the requirement that plaintiff show that there is no other adequate remedy for the protection of his rights and that political rights would not be curtailed. (See *Harnett* v. *County of Sacramento*, 195 Cal. 676, 683 [235 P. 445].) Before an injunction would be available to restrain legislative action in this case it would at least be necessary for plaintiff to show that the passage of the ordinance without ''any attempt to enforce it would instantly produce irreparable injury.'' (6 McQuillan, Municipal Corporations, 731.) Obviously, plaintiff cannot make such a showing, for if the ordinance is illegally enacted, he will have an adequate remedy in his right to seek an injunction restraining its enforcement or restraining anyone from building or operating a fish reduction plant pursuant to it.

The principal issue with respect to the validity of the remainder of the injunction is whether the board of supervisors under Ordinance 264 of Marin County and under the State Planning Act may issue a use permit after the Marin County Planning Commission had denied an application therefor.

The property in question was located in a district designated as an ''M-2'' or heavy industry zone by the master plan of Marin County. Section 11.19 of the ordinance in question provides that property in ''M-2'' zones may be used

for "All uses not otherwise prohibited by law; provided however, that none of the following uses shall be established in any 'M-2' district unless and until a use permit in each case shall first have been secured for such use: . . . Reduction, canning, processing or treatment of fish or of animal products of any kind."

Section 20 of the ordinance provides that use permits may be issued for "Any of the uses or purposes for which such permits are required or permitted by the provisions of this ordinance." This section also provides that, "Such permits shall be issued under the same procedure as that specified in Section 19 of this ordinance for the granting of adjustments or variances . . ." with certain exceptions relating to the conduct of hearings by the commission. Section 19 thus contains the procedural provisions applicable to the granting of use permits under section 11.19 of the ordinance.

The first sentence of section 19 concerns the powers of the board of supervisors and of the commission with respect to adjustments and variances. The power to grant adjustments and variances, within strictly defined limits, is given to the commission in the following terms: "The Planning Commission, *subject to the approval and confirmation* of the Board of Supervisors in each case, as hereinafter provided, *shall have the power to grant* adjustments and variances in any of the provisions of the ordinance. . . ." (Italics added.) This is not a procedural provision and therefore is not incorporated by reference into section 20. It should be noted, however, that the sentence vests "the power to grant adjustments and variances" in the commission, subject to the approval and confirmation of the board of supervisors, and does not reserve any authority in the board of supervisors to *grant* adjustments and variances.

The pertinent procedural provisions of section 19 are as follows:

"Application for any adjustment or variance permissible under the provisions of this section shall be made to the Planning Commission in the form of a written application for a building permit or for a permit to use the property or premises as set forth in said application."

"The Commission shall make its decision on the said application and shall report such decision to the Board of Supervisors."

"*No permit shall be issued* under the provisions of this

section *unless and until a decision of the Planning Commission, as aforesaid, approving the same, is approved and confirmed by the Board of Supervisors. . . .* Upon receipts of such report, if the decision of the Planning Commission *approved* the granting of the application, the Board of Supervisors either shall, by resolution, *approve and confirm said decision,* whereupon the permit as applied for may issue; *or shall refuse to approve and confirm said decision."* (Italics added.)

Section 19 thus expressly provides that no permit shall be granted without the approval of the planning commission. The board of supervisors is given power merely to approve or refuse to approve the decision of the commission approving the application for a permit; the board of supervisors is given no authority over the application should the commission deny it. Since the only procedure for granting use permits is that specified in section 19 for variances and adjustments, it follows that the board of supervisors was not authorized by the ordinance to take affirmative action on the application for a use permit in the face of the disapproval thereof by the planning commission.

It is contended, however, that the board of supervisors has inherent power to grant a use permit, and that any attempt to confer this power on the planning commission would be an unconstitutional delegation of legislative power to a local administrative board. The general rule, however, is that even the broader power to authorize a variance from the terms of a zoning ordinance may be granted to an administrative board without violating the principle against the delegation of legislative powers. (*Freeman* v. *Board of Adjustment,* 97 Mont. 342, 354 [34 P.2d 534]; *State* v. *Jacksonville,* 101 Fla. 1241, 1242 [133 So. 114]; *L. & M. Investment Co.* v. *Cutler,* 125 Ohio St. 12, 18 [180 N.E. 379, 86 A.L.R. 707] *McCord* v. *Ed Bond & Condon Co.,* 175 Ga. 667 [165 S.E. 590, 591, 86 A.L.R. 703]; cases collected 86 A.L.R. 714.) The action of the planning commission in denying a use permit is wholly administrative. There is no more delegation of legislative authority in this case than is normally involved in vesting administrative officers with authority to grant or deny a permit pursuant to a local ordinance. (See *Gaylord* v. *City of Pasadena,* 175 Cal. 433, 436 [166 P. 348]; *Gould* v. *Western Dairy Products, Inc.,* 12 Cal.App.2d 188, 191

[55 P.2d 274] ; see, also, *Rubin* v. *Board of Directors*, 16 Cal.2d 119, 124 [104 P.2d 1041].)

The board of supervisors, moreover, had no inherent power to grant the use permit regardless of the terms of the ordinance. It has long been recognized in this state that a county board of supervisors performs administrative as well as legislative functions. (*Chinn* v. *Superior Court*, 156 Cal. 478, 481 [105 P. 580].) If the board of supervisors had power to grant a use permit, it was an administrative power for the same reason that the granting of permits is administrative when done by a local board. When a board of supervisors acts in an administrative capacity, as in granting permits under a zoning ordinance, it is bound by the terms of the ordinance until the ordinance is amended through proper legislative procedure. (See *Magruder* v. *City of Redwood*, 203 Cal. 665, 675 [265 P. 806] ; *Hopkins* v. *MacCulloch*, 35 Cal.App.2d 442, 452 [95 P.2d 950].) The action of the Marin County Board of Supervisors in attempting to grant a use permit contrary to the terms of the ordinance cannot be considered an amendment to the ordinance, for by its terms and by the terms of the State Planning Act under which it was adopted, any amendments to the master plan must be submitted to the local planning commission. (Ordinance 264, § 21; State Planning Act, § 9.)

Defendants invoke the rule of contemporaneous and practical construction of the ordinance to support their contention that the ordinance authorizes the board of supervisors to issue a use permit after the planning commission has determined that it should be denied. In 1940, over two years after the enactment of the ordinance, the board granted an application for an adjustment after the commission had denied the application. In 1944, some six years after the enactment of the ordinance, the board granted an application for a use permit despite the commission's denial of the application. In neither instance was the action of the board of supervisors "made at or near the time of the enactment" of the ordinance. (See 3 Sutherland, Statutory Construction, p. 515.) Moreover, although contemporaneous construction by officials charged with the administration of a statute or ordinance is given great weight, "final responsibility for the interpretation of the law rests with the courts. 'At most administrative practice is a weight in the scale, to be considered but not to be inevitably followed.' "

(*Whitcomb Hotel* v. *California Emp. Com.*, 24 Cal.2d 753, 756-757 [151 P.2d 233, 155 A.L.R. 405], quoting from *F. W. Woolworth Co.* v. *United States*, 91 F. 2d 973.) The rule of contemporaneous construction may not be applied when the wording of the statute or ordinance, as in the present case, clearly calls for a different construction. (*California Drive-in Restaurant Ass'n.* v. *Clark*, 22 Cal. 2d 287, 294 [140 P.2d 657, 147 A.L.R. 1028].)

 Defendants also contend that under the State Planning Act, the Board of Supervisors of Marin County had no authority thus to limit its powers over use permits. It is conceded that the board of supervisors had no authority to pass an ordinance inconsistent with the State Planning Act. Whether or not the board might have had authority pursuant to article XI, section 11, of the California Constitution to provide for some form of zoning plan in the absence of a state statute on the subject of county zoning (see *Gilgert* v. *Stockton Port District*, 7 Cal.2d 384, 391 [60 P.2d 847]; Wertheimer, Constitutionality of Rural Zoning, 26 Cal. L. Rev. 175, 177), the county board of supervisors could not under this constitutional provision adopt a zoning ordinance conflicting with state legislation on the subject. The question arises, therefore, whether the State Planning Act required a board of supervisors to reserve to itself authority to grant a use permit of the type involved in this case regardless of the decision of the local planning commission.

Section 6.3 of the State Planning Act authorizes the legislative body of a county, in adopting a master plan or part thereof, *"to determine upon reasonable and practical means for putting into effect such master plan* or part thereof, in order that the same will serve as a pattern and guide for the orderly physical growth and development of such . . . county and as a basis for the efficient expenditure of the funds thereof relating to the subjects of such master plan. *Such legislative body may adopt and use such procedure as may be necessary for this purpose."* (Italics added.) This section clearly authorizes a county board of supervisors to provide in the county zoning ordinance for reasonable and practical means for putting the master plan into effect. The ordinance in question provides that fish reduction plants may be constructed and operated in "M-2" zones only when a use permit therefor is obtained on the approval of an appli-

cation for such a permit by both the planning commission and the board of supervisors. It could have provided that there should be no fish reduction plants in "M-2" zones; instead, it provides for such plants, if a proper permit is obtained. It could have provided that the board of supervisors was free to grant such permits; instead, it requires approval of both the planning commission and the board of supervisors for the construction of any fish reduction plant in "M-2" zones.

Section 20 of the ordinance indicates that this limitation was adopted to prevent the issuance of use permits that might "under the circumstances of the particular case, be detrimental to the health, safety, morals, comfort, convenience, or welfare of persons residing or working in the neighborhood of such use. . . ." The requirement of affirmative action by both bodies is certainly a reasonable and practical means of accomplishing this purpose and putting the master plan into effect under section 6.3 of the State Planning Act. (See, also, § 8 of the State Planning Act.)

The procedure set forth in the ordinance is designed to protect interested citizens and property owners. The requirement that the board of supervisors follow this procedure cannot be disregarded on the ground that the board can modify the procedure by amending the ordinance. The State Planning Act prescribes a definite procedure for amending the local planning ordinance. It provides for public hearings before the local planning commission before adoption of the ordinance and before any amendments may be made to the ordinance after its adoption, as a means of protecting interested citizens and property owners. Before any ordinance is adopted, the local planning commission must hold public hearings at which interested parties may appear. (State Planning Act, § 5.) A proposed plan is then submitted to the local legislative body, which also holds public hearings. Any change in the proposed ordinance must be submitted to the commission for additional public hearings. (*Ibid.* § 6.)

The board of supervisors does not now have unlimited power to make any change in the ordinance. Substantially the same procedure used in adopting the ordinance must be followed in making changes. The board has no power to make changes until it has submitted them to the commission for public hearings, where interested parties may appear and present arguments in opposition thereto. (*Ibid.* § 9.) If the

board of supervisors, in an administrative capacity, can ignore the clear provisions of the ordinance, it was idle to prescribe the procedure for amendments.

Defendants contend that the Legislature has provided a specific procedure in section 10 of the state act for the issuance of use permits and that the ordinance in question is inconsistent with that section, which provides: "The body creating such planning commission *may,* by general or special rule, provide for the reference of any *other matter* or class of matters to the planning commission before final action thereon *by the public body or officer* of said city, county, or city and county, *having final authority thereon,* with the provision that final action shall not be taken until said planning commission has submitted its report thereon or has had reasonable time, to be fixed in said rule, to submit the report. The planning commission shall have full power and authority to make such investigations, maps and reports, and recommendations *in connection therewith relating to the planning and development* of the city, county, or city and county, as it deems desirable, providing the total expenditures of said board shall not exceed the funds available therefor." (Italics added.)

There is nothing in this section that requires the body creating the planning commission to reserve to itself final authority over such matters as the use permit involved in this case. It provides the procedure to be followed in certain matters when final authority thereon is within the jurisdiction of some body other than the planning commission. The parties disagree as to what matters are referred to by the phrase "Other matters or class of matters." Defendants contend that it refers to any action with respect to local zoning other than amendments to the master plan provided for in the preceding section (§ 9). Plaintiff, on the other hand, construes the phrase as referring to matters affecting zoning that are not otherwise covered in the entire act. Under the latter construction, section 10 would be applicable if a local officer or board had final jurisdiction over some matter "relating to the planning and development of the . . . county" that was not an integral part of the zoning plan. It would authorize the local legislative body to require such officer or board to refer the matter to the planning commission before taking action. The last sentence in section 10 lends weight to this construction, for if section 10 refers to the administration of the basic

zoning plan itself, it was unnecessary for the Legislature to provide in this section that the "commission shall have full power and authority to make such investigations, maps and reports, and recommendations in connection therewith relating to the planning and development of the city, county, or city and county, as it deems desirable. . . ." Such powers are conferred on the commission by section 8 in connection with its duties in "carrying out" the master plan: "The commission, and its members, officers and employees in the performance of their functions, may enter upon any land and make examinations and surveys. . . . In general the commission shall have such power as may be necessary to enable it to fulfill its functions and carry out the purposes of this act."

Even if it be assumed, however, that defendants' construction is correct, section 10 would not apply to the use permit involved in this case. By its terms, the section applies only if final authority over the action referred to is given to some body or officer. There is no provision of either state or local law giving final authority over such use permits to the board of supervisors when the planning commission has decided against their issuance. Section 10 does not state that the body creating the commission must provide for reference to the planning commission of any matter involving the administration of county zoning before final action thereon is taken by the body creating the planning commission. In order to read the section as if it contained such a provision it would be necessary to ignore the words "public body or officer . . . having final authority thereon." The section obviously applies to action taken by any local public body or officer, and it applies to a board of supervisors only if that body is the one having final authority over the matter involved. Moreover, it is circular reasoning to conclude that this section gives final authority over any matter to any officer or board, for until the question of the final authority of that body is determined, the question of the applicabiliy of section 10 remains undetermined.

Defendants rely on a dictum in *Hopkins* v. *MacCulloch*, 35 Cal.App.2d 442, 450 [95 P.2d 950], involving the effect of section 10 on the power of a planning commission over nonconforming use permits: "From an interpretation of . . . section 10, *supra, when construed with the ordinance adopted pursuant thereof,* it appears to us that the *planning commission created by the* ordinance was more or less an advisory

body. . . ." (Italics added.) The permit involved in that case was of the nonconforming type under which a property owner might be allowed to continue a use prohibited by the master plan, a different type of permit from that involved in the present case. The ordinance there involved reserved to the city council the power to grant a nonconforming use permit by unanimous vote when the planning commission decided against the applicant. Since final authority was thus expressly given the city council, the reference to section 10 of the State Planning Act was unnecessary. Whether or not this dictum that a nonconforming use permit is "other matter or class of matters" within the meaning of section 10 is correct, the section has no application to a provision for use permits adopted as a method of administering the zoning plan, when there is no provision giving final authority over such permits to some local body or officer. Not only is no provision of the State Planning Act inconsistent with section 19 of the ordinance in question, but authority for that section is contained in section 6.3 of the state act.

The second ground on which the injunction was sought is that the action of the board of supervisors, even if authorized by law is invalid because of the disqualification of a member who cast the deciding vote. Since the board in any event was without authority to grant the use permit, it is unnecessary to decide whether the supervisor in question was disqualified.

Plaintiff alleged in his complaint that the operation of the proposed plant would be offensive and would interfere with the proper use of his property. Defendants contend that the injunction is excessive on the ground that these allegations were designed to show a basis for injunctive relief regardless of whether or not the interveners obtained a valid use permit. It is contended that the trial court enjoined the operation of the plant on the ground that it would be a nuisance even if authorized under the zoning regulations. Although plaintiff has argued on appeal that such relief would be proper, there is nothing in the injunction to indicate that the trial court based its order on this ground. Even if the allegations with respect to the offensive nature of the proposed plant can be construed as allegations of a nuisance, they also form the basis of plaintiff's right to injunctive relief against the board of supervisors to prevent the issuance of a use permit contrary to the terms of the ordinance. The interveners were dismissed as defendants and appear only as

interveners. There is, therefore, no basis for the contention that they were enjoined from operating the proposed plant under a valid permit, for they are not directly enjoined from doing anything. Since the board of supervisors could not legally grant interveners application for a use permit, it is immaterial whether or not the interveners could be enjoined from operating under a valid permit. (For a collection of conflicting authorities on this question see note 166 A.L.R. 659; see, also, Civ. Code, § 3482; *Norton v. City of Pomona,* 5 Cal.2d 54, 60 [53 P.2d 952].)

The order granting the injunction pendente lite is affirmed insofar as it restrains the members of the Board of Supervisors of Marin County from attempting to grant a use permit after negative action by the Marin County Planning Commission. That part of the order purporting to restrain the members of the board of supervisors from taking any action to amend the local zoning ordinance is reversed.

Gibson, C. J., Edmonds, J., Spence, J., concurred.

SCHAUER, J.—I dissent from all of the judgment of this court except insofar as it reverses that part of the trial court's order which purports to restrain the members of the board of supervisors from proceeding with the enactment of a regulatory ordinance governing the construction and operation of reduction plants.

The chief question presented for decision is whether under the provisions of the State Planning Act (2 Deering's Gen. Laws, Act 5211b) and of Marin County Ordinance No. 264 the Board of Supervisors of Marin County may grant a use permit despite an adverse recommendation of the county planning commission. For reasons hereinafter stated, I am of the opinion that final authority in such matters rests in the board, that the recommendation of the planning commission is advisory only, and that the order of the trial court based upon a contrary view should be reversed in its entirety.

The majority opinion rests largely, if not completely, as to this phase of the case upon the declaration that "Section 19 [of Marin County Ordinance 264] thus expressly provides that no permit shall be granted without the approval of the planning commission. The board of supervisors is given power merely to approve or refuse to approve the decision of the commission approving the application for a permit; the

board of supervisors is given no authority over the application should the commission deny it." Having asserted such significance for section 19 of the ordinance, the opinion proceeds to interpret other sections thereof in the "light" of unquestioning acceptance of, and dependence on, its primary assertion. If that basic pronouncement falls, so does the whole discussion.

The obvious vice in the above quoted pronouncement lies in the fact that section 19, read in its context, does not even purport to deal with powers of the board of supervisors; it deals expressly with powers of the planning commission. Ordinance 264, enacted by the board of supervisors, was not enacted to create a board of supervisors or to define the powers of the creating board; it was enacted to create a planning commission and to define the powers of such commission. Manifestly, such ordinance is not intended to constitute a grant of power to the creating board; rather is it a delegation by the creating board of certain powers within its authority. A delegation of authority by a superior to an inferior does not work a complete divestment of the power of the superior; the power of the inferior derives from the superior and the latter is the final repository of all the power, with the right to exercise the same, except as such right may be limited by its own acts. The ordinance does provide for a planning commission; it does specify the powers delegated to that commission; and it does declare limitations on the authority of the commission it creates; but nowhere does it declare that the power of the commission is total or absolute or exclusive or other than advisory; nowhere does it declare that the board of supervisors abdicates, or transfers to the commission, the ultimate power of decision. The language most strongly relied upon by the majority is (§ 19): "No permit shall be issued *under the provisions of this section* [i.e., by the planning commission] unless and until a decision of the Planning Commission, as aforesaid, approving the same, is approved and confirmed by the Board of Supervisors." (Italics added.) This stated limitation of power seems to me to be clearly a limitation upon the commission, not upon its creator, the board of supervisors. It appears to me to be reasonably designed to preclude, not to establish basis for, a construction of the law vesting a totality of power in the commission. Theories of absolutism in administrative agencies are not favored in traditional concepts of our ideology and should

not be invoked by judicial interpolation. (See Roscoe Pound, "Annual Survey of Law: Decisions of Courts Show Some Dangerous Trends" (Nov. 1947), 33 Am. Bar Ass'n. Journal 1093.) That it is only by dint of such interpolation that the conclusion of the majority can be reached becomes evident upon consideration of the ordinance as a whole.

Ordinance No. 264 was adopted in 1938, pursuant to the mandatory provisions of the State Planning Act as amended in 1937 (Deering's Gen. Laws, Act 5211b), and sets up a comprehensive zoning system for the county covering all territory therein outside of incorporated cities and towns. By its provisions, the county is zoned into various districts, including residential, commercial, and light and heavy industrial, and the uses to which the land lying within the respective districts may be put are specified. Procedures are also set forth for the application for and granting of adjustments or variances, and of use permits for the operation of various types of businesses in certain districts.

By section 11.18 of Ordinance 264 district "M-1," in which petitioner seeks to establish a fish cannery and reduction plant, is zoned for "1. Commercial excavating . . . 2. All other uses not otherwise prohibited by law, except the following: . . . reduction, canning, processing or treatment of fish or animal products of any kind . . ." Section 19, which deals with adjustments, variances, and appeals, provides that "The Planning Commission, subject to the approval and confirmation of the Board of Supervisors in each case, as hereinafter provided, shall have power to grant adjustments and variances in any of the provisions of this ordinance to the extent of the following and no further: . . .

"Application for any adjustment or variance . . . shall be made to the Planning Commission in the form of a written application . . .

"[Following a public hearing] The Commission shall make its decision on the said application and shall report such decision to the Board of Supervisors.

"In granting any adjustment or variance under the provisions of this section, the Planning Commission shall designate such conditions in connection therewith as will, in its opinion, secure substantially the objectives of the regulation or provision to which such adjustment or variance is granted, as to light, air, and the public health, safety, comfort, convenience and general welfare. *No permit shall be issued un-*

der the provisions of this section unless and until a decision of the Planning Commission, as aforesaid, approving the same, is approved and confirmed by the Board of Supervisors. . . . Upon receipt of such report, if the decision of the Planning Commission approved the granting of the application, the Board of Supervisors either shall . . . approve and confirm said decision, whereupon the permit as applied for may issue; or shall refuse to approve and confirm such decision. . . ." (Italics added.)

Section 20 states that "Use permits may be issued for any of the following:

"1. Any of the uses or purposes for which such permits are required or permitted by the provisions of this ordinance. . . .

"Such use permits shall be issued under the same procedure as that specified in Section 19 . . . for the granting of adjustments or variances, except that: . . . 2. The findings of the Planning Commission, except as otherwise provided in this section, need include only that the establishment, maintenance or conducting of the use for which a use permit is sought will not, under the circumstances of the particular case, be detrimental to the health, safety, morals, comfort, convenience, or welfare of persons residing or working in the neighborhood of such use and will not, under the circumstances of the particular case, be detrimental to the public welfare or injurious to property or improvements in said neighborhood.

". . . All other provisions of said Section 19, including the designation by the Planning Commission of any conditions upon which the use permit may be issued and guarantees that such conditions will be complied with, shall apply to the granting of a use permit."

Sections 9 and 10 of the State Planning Act (Deering's Gen. Laws, Act 5211b), which act concededly is controlling over the local Marin County ordinance, provide as follows:

"§ 9. The legislative body [of a city or county] is authorized and empowered . . . to change or add to the master plan or any part thereof . . . or to change or add to the official plan or any part thereof. The legislative body shall first refer the proposed change or addition to the planning commission for a report thereon. [Public hearings are then required.] . . . Proceedings for any change in . . . the

master plan or any official plan, or any part thereof, may also be initiated by the planning commission.

"§ 10. The body creating such planning commission may, by general or special rule, provide for the reference of any other matter or class of matters to the planning commission before final action thereon by the public body or officer of said city, county, or city and county, having final authority thereon, with the provision that final action thereon shall not be taken until said planning commission has submitted its report thereon or has had reasonable time, to be fixed in said rule, to submit the report. . . ."

In support of its position that the board of supervisors cannot lawfully issue a use permit against the adverse recommendation of the planning commission, the majority opinion, as previously indicated, relies upon those portions of section 19 of Ordinance 264 which state that "No permit shall be issued . . . unless and until a decision of the Planning Commission, . . . approving the same, is approved and confirmed by the Board of Supervisors. . . . Upon receipt of such report [of the decision of the commission], if the decision of the Planning Commission approved the granting of the application, the Board of Supervisors either shall . . . approve and confirm said decision, whereupon the permit as applied for may issue; or shall refuse to approve and confirm such decision." For the reasons hereinafter stated I am convinced that, properly construed, the quoted provisions of section 19, as adopted into section 20, grant to the planning commission only the limited power to consider the merit or lack thereof of each application for a use permit and to transmit to the board of supervisors the opinion of the commission thereon; in other words, the commission is to act as an advisory body but is to have no power, under the terms of the ordinance, to issue a final decision either for or against a permit.

By the provisions of section 9 of the State Planning Act quoted hereinabove, power to "change or add to the master plan or any part thereof . . . or to change or add to the official plan or any part thereof" is expressly placed in the legislative bodies of local governmental units—in this instance the Board of Supervisors of Marin County—subject only to the requirement that the matter first be referred to the planning commission for a report and that public hearings be had, and by section 10 it is provided that "The

body creating such planning commission may . . . provide for the reference of any other matter or class of matters to the planning commission before final action thereon by the public body or officer . . . having final authority thereon, with the provision that final action thereon shall not be taken until said planning commission has submitted its report thereon or has had reasonable time . . . to submit the report. . . .'' Whether the granting of a nonconforming use permit be regarded on the one hand as falling under the ''change . . . to the master plan or . . . to the official plan'' as described in section 9, or on the other hand as being one of the ''other . . . class of matters'' mentioned in section 10, the statute unequivocally contemplates that the ultimate decision is in the hands of the local legislative body. No provision is made that the report of the planning commission shall carry any other or greater weight than that which the legislative body may wish to bestow on it.

Nor, I am convinced, was it the intent of the board of supervisors in adopting Ordinance 264 to irrevocably delegate a controlling power to the planning commission, or otherwise to so limit the authority primarily vested in the board as to render them powerless to grant a nonconforming use permit without prior approval of the commission. Section 19, which treats of adjustments, variances and appeals, and which is to be followed generally in the application for and issuance of use permits under section 20, carries an introductory sentence which, as quoted hereinabove, states that ''The Planning Commission, *subject to the approval and confirmation* of the Board of Supervisors in each case, *as hereinafter provided, shall have power*. . . .'' (Italics added.) It is to be noted that this section contains the delegation of only a limited power to the commission and that such power is expressly declared to be ''subject to the approval and confirmation of the Board of Supervisors in each case.'' Following the qualified grant there appear procedural and other provisions to be followed by the commission before its decision and report to the board is made. The subsequent statements, so heavily relied upon by the majority opinion, that ''No permit shall be issued under the provisions of this section unless and until a decision of the Planning Commission, as aforesaid, approving the same, is approved and confirmed by the Board of Supervisors. . . . [I]f the decision of the Planning Commission approved the granting of the application,

the Board of Supervisors either shall . . . approve and confirm said decision, whereupon the permit as applied for may issue; or shall refuse to approve and confirm such decision. . . .,'' would seem to be, and it is my view that they are, inserted as an explicit recognition of the limitation upon the power of the planning commission and not as creating a controlling delegation of, or limitation upon, the ultimate power of the board of supervisors. The section, of course, contains no grant of power to the board of supervisors because all power not granted or delegated is reposed by the basic state law in the board. Ultimate disposition of the matters dealt with in the sections in question (§§ 19, 20) would, at least normally, be a function of the board. No provision appears in any portion of the ordinance which expressly declares that the board shall be bound by a report of the planning commission adverse to the granting of a nonconforming use permit, and certainly in accord with accepted legal principles such a restriction should not be added by judicial interpolation.

The majority opinion relies upon *Magruder* v. *City of Redwood* (1928), 203 Cal. 665, 675 [265 P. 806]; and *Hopkins* v. *MacCulloch* (1939), 35 Cal.App.2d 442, 452 [95 P.2d 950] (see also *Schofield* v. *City of Los Angeles* (1932), 120 Cal. App. 240, 245-246 [7 P.2d 1076]) as authority for the proposition that a board of supervisors is bound by county ordinances. I discover nothing in any of these cases which should affect the decision here. In the Magruder case it was held that a city board of trustees which granted a permit to construct a building that was subsequently used for a purpose in violation of a zoning ordinance did not thereby place themselves ''in a position that prevented them from thereafter enforcing the terms of the ordinance.'' (P. 674 of 203 Cal.) In *Hopkins* v. *MacCulloch* (1939), *supra,* 35 Cal.App.2d 442, 452, the city council of Newport Beach was held to be without power to grant a nonconforming use permit by a vote of only four of its five members, inasmuch as a city ordinance required the ''full, affirmative vote of all members thereof.'' No such provision is contained in Ordinance No. 264 of Marin County, nor are analogous requirements set forth. And contrary to the position taken by the majority opinion it is noted that those provisions in the Newport Beach ordinance which dealt with consideration by the planning commission of nonconforming use permits were held (at

p. 450 of 35 Cal.App.2d) not to be ''a delegation of power or authority of the city council to the planning commission.'' Furthermore, the court there expressly observed that ''From an interpretation of . . . section 10 [of the planning act] . . . when construed with the ordinance adopted in pursuance thereof, it appears to us that the planning commission created by the ordinance was more or less an advisory body only, and its powers must be limited to its consideration of applications for permits, and to *recommendations* for or against the allowance of the permit. The commission is authorized by the ordinance to hold public hearings on any such application after publication of notice of hearing, to the end that property owners may have an opportunity to object to the granting of the permit on the ground that detriment or injury may result to the neighborhood.'' The same may be appropriately said in respect to Marin County Ordinance 264.

If there still can remain any doubt as to the proper construction of the ordinance in question it is resolved by the fact that in this case we have for our guidance not only the language of the enactment and the considerations which have been mentioned but also evidence establishing the construction placed upon the ordinance as to the precise point now in dispute by the very legislative body which enacted it. The ordinance was adopted in 1938. The record shows, with no dispute, ''That with no exception, the Minutes of the Board of Supervisors show that from August 3rd, 1938, the date of the passage of said Marin County Planning Ordinance No. 264, to date, the Marin County Board of Supervisors has held hearings upon recommendations of the Marin County Planning Commission whether the . . . Commission recommended approval or denial of the said applications for Use Permits, Adjustment Permits or Variance Permits;

''That . . . The Minutes of the Board of Supervisors show specific instances in which the . . . Planning Commission presented to the Board of Supervisors their recommendations denying applications for Adjustment Permits and Use Permits, whereupon the . . . Supervisors held a hearing, reviewed the recommendation of the . . . Planning Commission and either approved the recommendation denying said application or reversed the recommendation of the

Planning Commission and granted the application for a Use Permit or an Adjustment . . .

"That . . . the Marin County Board of Supervisors consistently and with no exception, interpreted Section 19 of . . . Ordinance #264 as never having divested them of the power to overrule the recommendations of the . . . Planning Commission . . . whether said . . . Planning Commission recommended that said Use Permit be denied or granted."

The record contains certified copies of excerpts from minutes of meetings of the board of supervisors showing that on 16 different applications (previous to the one in this case, which is number 17), at meetings held on November 14, 1938, April 10, 1939, November 25, 1940, February 24, 1941, May 26, 1941, October 14, 1941, April 6, 1942, September 14, 1942, November 9, 1942, November 23, 1942, April 7, 1943, July 26, 1943, November 8, 1943, November 22, 1943 (two applications), and November 13, 1944, the board evidenced its construction of the ordinance by proceeding to hear, consider and pass on applications for use permits or adjustments notwithstanding denial recommendations by the planning commission. There is no suggestion that the record is incomplete or that in any instance, from the enactment of the ordinance to the date of this action, the board deviated from its construction of the ordinance. Thus, in every case wherein the point was involved, the legislative body which drafted and adopted the ordinance construed it as giving the planning commission investigative and advisory powers only and as leaving in the board the jurisdiction which they exercised.

The majority opinion mentions two instances, other than in the matter before us, in which the board granted an adjustment or use permit "despite the commission's denial of the application"; it wholly ignores the 14 other instances in which the board just as clearly evidenced the same construction by considering and passing on the commission's recommendation for denial. The evidence of construction is equally clear whether the planning commission's recommendation for denial was disapproved or approved. If the majority opinion is correct, the action of the planning commission recommending denial was not a mere advisory recommendation, it was a final denial and there was nothing for the board to act on. Yet in every instance it did consider

the application and the planning commission's recommendation and did take final action for the granting or denial of the application.

This court has repeatedly stated that the construction of a statute by the officials charged with its administration must be given great weight. (*Nelson* v. *Dean* (1946), 27 Cal.2d 873, 880 [168 P.2d 16] ; *Whitcomb Hotel, Inc.* v. *California Emp. Com.* (1944), 24 Cal.2d 753, 756 [151 P.2d 233, 155 A.L.R. 405] ; *County of Los Angeles* v. *Frisbie* (1942), 19 Cal.2d 634, 643 [122 P.2d 526] ; *Los Angeles County* v. *Superior Court* (1941), 17 Cal.2d 707, 712 [112 P.2d 10] ; *Riley* v. *Thompson* (1924), 193 Cal. 773, 778 [227 P. 772].) Here we have contemporaneous and administrative construction by the very body which enacted the ordinance and such construction has been uniform and unwavering and repeatedly acted upon and unequivocally evidenced in a series of proceedings beginning within a few months of adoption of the ordinance and running down to the date of the consistent action in the matter now before us. My attention has never been called to a case wherein the elements demanding respect for contemporaneous and administrative construction are greater.

So far as concerns that portion of the injunction order appealed from which restrains the board of supervisors from proceeding with the adoption of the ordinance to regulate reduction plants, it is only when such a board is acting in excess of its jurisdiction that its legislative actions may be interfered with by the courts. (See *Glide* v. *Superior Court* (1905), 147 Cal. 21, 25 [81 P. 225] ; *Muchenberger* v. *City of Santa Monica* (1929), 206 Cal. 635, 646 [275 P. 803] ; *Reclamation District* v. *Superior Court* (1916), 171 Cal. 672, 681-682 [154 P. 845] ; cf. *Brock* v. *Superior Court* (1938), 11 Cal.2d 682 [81 P.2d 931] ; *McKay Jewelers* v. *Bowron* (1942), 19 Cal.2d 595, 599 [122 P.2d 543, 139 A.L.R. 1188].) Inasmuch as the Legislature has by the State Planning Act placed in the Board of Supervisors of Marin County final authority to act on zoning matters in that county, it is apparent that the adoption of regulatory ordinances falls within such authority. The conditions to be designated by the planning commission pursuant to sections 19 and 20 of Ordinance 264, should it recommend to the board the granting of a variance, adjustment, or nonconforming use permit are, as are the other recommendations of the commission, advisory

only, and deprive the board of none of its ultimate power. Consequently the court below erred in enjoining further proceedings to complete the enactment of the disputed ordinance.

And until such an ordinance were adopted and in effect and appellant Alioto's reduction plant were operating under its terms, it is difficult to perceive upon what basis the trial court could conclude, as would be necessary to sustain the injunction, that, as plaintiff-respondent attempts to plead in his complaint (and as denied in Alioto's answer), such plant would constitute a nuisance in fact. The parties argue the point whether a reduction plant operating under a regulatory ordinance and pursuant to a use permit could lawfully be deemed a nuisance in any event (see Civ. Code, § 3482; *Norton* v. *City of Pomona* (1935), 5 Cal.2d 54, 59 [53 P.2d 952]; *Eaton* v. *Klimm* (1933), 217 Cal. 362, 370 [18 P.2d 678]). However, in view of the fact that the proposed plant would be constructed and operated in a district already zoned for heavy industry, in view of the further fact that the proposed ordinance does not purport to authorize, and does purport to forbid, conditions which might amount to a nuisance, and because other material conditions under which the plant would operate cannot be determined at this date, the trial court does not appear to have been in a position to properly determine that the plant would constitute a nuisance if and when operating.

Plaintiff-respondent's argument that the actions of the board with respect to both the use permit and the ordinance were void by reason of the fact that Supervisor Thompson, who cast one of the three original affirmative votes, is the husband of one of appellant Alioto's attorneys is based upon contentions that the board in hearing and passing upon an application for a nonconforming use permit is acting in a judicial, or at least quasijudicial, capacity; that the granting of such a permit "appears to be a right in the nature of a grant or franchise" and therefore is a contract; that because sections 168 and 171 of the Civil Code make a wife's earnings after marriage liable for necessities of life contracted for by her husband despite a gift to her from him (as was here made by Supervisor Thompson to his wife) of his interest in such earnings, Supervisor Thompson was necessarily interested in assisting his wife to successfully represent Alioto and thus, presumably, to earn a larger fee for her services; and that

therefore Supervisor Thompson was by reason of public policy as expressed in various court decisions and of statutory law as set forth in section 170 of the Code of Civil Procedure and section 1090 of the Government Code disqualified from acting in either a quasijudicial capacity or in the making of a contract by the board of supervisors.

I find no occasion to pass on the question of the asserted disqualification of Mr. Thompson. Such question has become entirely moot. Since the appeal was taken Mr. Thompson has ceased to be a member of the board of supervisors. Immediately following the vote on the application for the nonconforming use permit and again following that on the proposed ordinance, one of the supervisors who had voted against both measures gave notice that, under parliamentary rules of order, he elected to change his vote to the affirmative and moved for reconsideration of the questions at the next meeting of the board of supervisors. The board then adjourned to meet again on March 12, 1945, and two days prior to that date (on March 10, 1945) plaintiff filed his complaint herein. The status of the application is, therefore, that of a pending matter before the board of which Mr. Thompson is not a member. The legal question as to whether Mr. Thompson was qualified or disqualified in respect to participation in the original vote does not appear to have any possible effect upon the validity of the proceedings which must ensue upon the going down of the remittitur. The motion for reconsideration will be acted upon by a board of which Mr. Thompson is not a member and its action will control.

For the reasons above set forth, I would reverse all portions of the order appealed from.

Shenk, J., and Carter, J., concurred.

Appellants' petition for a rehearing was denied December 29, 1947. Shenk, J., Carter, J., and Schauer, J., voted for a rehearing.