[Civ. No. 26876. Second Dist., Div. One. Mar. 29, 1963.]

CHRISTIAN PRIP, Plaintiff and Appellant, v. CITY OF SANTA BARBARA, Defendant and Respondent; DONALD G. CARTER et al., Real Parties in Interest and Respondents.

Ardy V. Barton for Plaintiff and Appellant.

Stanley T. Tomlinson, City Attorney, for Defendant and Respondent.

No appearance for Real Parties in Interest and Respondents.

LILLIE, J.—By resort to administrative mandamus (Code Civ. Proc., § 1094.5) appellant as a taxpayer sought to compel respondent City of Santa Barbara to grant a hearing of an application for a zoning variance by the real parties in interest. Such application, it appears, was voluntarily withdrawn when the application was before respondents' planning commission. On appeal by petitioner to the city council, that body upheld the action of the planning commission in permitting the withdrawal. A demurrer to the amended complaint was sustained without leave to amend. This appeal is from the judgment dismissing the proceeding.

Since we are called upon to decide whether the facts alleged afforded any ground for relief, they will be stated largely in the language of the complaint as last amended (together with attached exhibits). Petitioner owns certain described property in Santa Barbara which is located in a C-2 zone pursuant to Ordinance No. 2585. The real parties in interest are the owners and operators of the Carrillo Auditorium which, as will presently be seen, is adjacent to petitioner's property; constructed before 1940, the auditorium

building is also used as a dance hall. On an unstated date the real parties in interest commenced certain structural changes in their building for the alleged purpose (among other things) of operating a cocktail lounge. While the required building permits were obtained from the proper city officials, no variance was applied for on advice of the zoning administrator. Subsequently, upon discovery of variations from that embraced by the permits, the work was stopped by respondents' building director; following a report by the latter to the city council, that body voted to refer the matter to the planning commission "for variance proceedings" if sought. In this connection, petitioner alleges that the city council passed the resolution requiring the real parties to apply to the planning commission for a variance because it was found that physical changes had been made and said premises were "nonconforming" because of lack of parking. Sections of ordinances 2585 and 2628, said to govern, are set forth below :[1]

The aforesaid resolution was also passed contemporaneously with a ruling by the city attorney that the real parties "would

---

[1]) *Section 1.39—Non-Conforming Building:*

"A building, structure or portion thereof, which does not conform to the regulations of the ordinance and which lawfully existed at the time the regulations with which it does not conform, became effective.

"2) *Section 1.40—Non-Conforming Use:*

A use of a building or land which does not conform to the regulations of this ordinance and which lawfully existed at the time the regulations with which it does not conform became effective.

"3) Ordinance 2628, adopted August 29, 1957 by the City Council of Santa Barbara, Section 1, paragraphs A and B:

"Section 1: Section 22.05 of Ordinance No. 2585 is hereby amended to read as follows:

"Section 22.05: Nonconforming buildings and uses.

"The following regulations shall apply to all nonconforming buildings and structures or parts thereof and uses legally existing at the effective date of this ordinance.

"A. Any such nonconforming building or structure may be continued and maintained; provided, there is no physical change other than necessary maintenance and repair in such building or structure except as permitted in other sections of this ordinance.

"B. Any such nonconforming use of a conforming building may be maintained and continued; provided, there is no increase or enlargement of the area, space or volume occupied or devoted to such nonconforming use, except as otherwise provided in this ordinance.

"4) *Section 23.05—Auditoriums:*

"For church, high school, college or university auditoriums and for theaters, general auditoriums, and other similar places of assembly, one (1) parking space shall be provided for every six (6) seats provided in such building. A seat shall mean eighteen (18) lineal inches of seating space when seats are arranged in rows or pews. For auditoriums with

have to file for a variance because they were [*sic*] a legal nonconforming building because they had no parking as required by the Ordinance."

Thereafter, it is then alleged, the planning commission held its hearing on the real parties' application for a variance. At said hearing, and pursuant to a written opinion by the city attorney that the auditorium was *not* a legally nonconforming building, the planning commission voted in effect to adopt the conclusion in the above opinion that it had no jurisdiction in the matter and allowed the application to be withdrawn. Based upon the same opinion, the city council subsequently sustained the action of the planning commission.

It is further alleged that the planning commission, the city council, the city zoning administrator and the city attorney for a period of more than 10 years prior to the filing of the instant petition "continuously and consistently required not having the required area for parking to be the subject of the application for a variance whenever their owners sought to make a physical change therein."

The pleading concludes with allegations that petitioner, having exhausted his administrative remedies, has no adequate remedy at law unless respondent is required to assume jurisdiction of the application of the real parties "to apply for a variance for the parking requirements of Ordinance 2585 . . . [and] serious and irreparable damage will be done to the petitioner in that the patrons and customers of the Carrillo Auditorium should not be able to find parking on said premises; that said cocktail patrons will use and occupy the parking spaces provided by the petitioner for his own . patrons and customers . . . without his consent" as assertedly has been done in the past.

In support of his contention that the facts above sum-

no permanent seats, a seat shall mean seven (7) square feet of floor area. Each such parking space shall contain at least two hundred and fifty (250) square feet including adequate space for ingress and egress, and shall be on the same lot or within five hundred (500) feet of the building.

"5) *Section 23.06—Amusements:*

"For stadiums, arenas and fairs, one parking space shall be provided for each four (4) seats of eighteen (18) lineal inches each.

"For dance halls, one (1) parking space shall be provided for each one hundred (100) square feet of floor area or fraction thereof.

"For bowling alleys, four (4) parking spaces shall be provided for each alley.

"Each such parking space shall contain at least two hundred and fifty (250) square feet including adequate space for ingress and egress, and shall be on the same lot or within five hundred (500) feet of the building or amusement area."

marized sufficiently state a cause of action for the relief requested, petitioner properly stresses the principle of contemporaneous construction by the officials concerned; that such construction, since allegedly long continued, is entitled to great weight; and that the opinion subsequently rendered to the commission and the council should have been disregarded. But it was observed in *Johnston* v. *Board of Supervisors,* 31 Cal.2d 66, 74 [187 P.2d 686], that " ' "administrative practice is a weight in the scale, to be considered but not to be inevitably followed." ' [Citation.]" The same decision also declares that "The rule of contemporaneous construction may not be applied when the wording of the statute or ordinance . . . clearly calls for a different construction." (P. 75.)

Section 23 of ordinance 2585 provides that "For each dwelling, multiple dwelling, business or industrial establishment or other structure *hereafter erected* there shall be provided and maintained off street parking . . ." (Italics added.) Since the auditorium owned by the real parties was concededly constructed in 1940, some 17 years before the section just quoted, went into effect, it is the respondents' present position that by the use of the words "hereafter erected" the legislative body clearly intended that only buildings or structures erected in the future should be required to provide adequate off-street parking facilities. Under the circumstances, it is therefore argued, it became unnecessary to determine whether the physical changes in the auditorium constituted a nonconforming use or a nonconforming building. The argument is not without merit. In the *Johnston* case, *supra,* it was stated that "When a board of supervisors acts in an administrative capacity, as in granting permits under a zoning ordinance, it is bound by the terms of the ordinance until the ordinance is amended through proper legislative procedure." (P. 74.) Santa Barbara, like most other California cities, apparently has downtown parking problems which demand solution. But since the action of the trial court must be sustained on other grounds, we do not decide whether it would have been error to deny petitioner any relief in view of the language contained in section 23 of the governing ordinance.

As noted at the outset, petitioner has resorted to administrative mandamus to compel the respondent to entertain the real parties' variance application. ▮ The controlling statute (Code Civ. Proc., § 1094.5) calls for the issuance of a writ to inquire into the validity of "any final administrative

order.''[2] It is now settled that section 1094.5 governs review by mandamus after a formal adjudicatory decision by any administrative agency. (*Temescal Water Co.* v. *Department of Public Works,* 44 Cal.2d 90, 101 [280 P.2d 1].) As declared in that case: ''The decisive question is whether the agency exercises an adjudicatory function in considering facts presented in an administrative hearing. As noted in *Boren* v. *State Personnel Board,* 37 Cal.2d 634 [234 P.2d 981], a case involving an agency not included within the Administrative Procedure Act but having functions specified by constitutional provisions, ' [s]ince the enactment of section 1094.5 of the Code of Civil Procedure, it is no longer open to question that in this state the writ of mandamus is appropriate ''for the purpose of inquiring into the validity of any final administrative order or decision made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer . . .'' ' (P. 637).''

█ In the present case, the planning commission did not adjudicate any matters nor did it exercise any discretion in the determination of any facts, nor did the council on the subsequent appeal thereto. The proceeding before the planning commission was not, as urged by petitioner, initiated *sua sponte* by the city council; to the contrary, the record discloses that the council's resolution referred the matter to the planning commission ''for variance proceedings, provided the property owners filed the proper application.'' Having filed their application, the real parties were free to withdraw the same before any final adjudication in the premises.

█ We reach the conclusion that the real parties were free to withdraw their application and thus, in effect, dismiss the action because zoning proceedings are at least quasi-judicial in their nature. Thus, discretion is conferred upon the board, subject to review by the municipal or other governing agency; too, although the hearing may be informal, technical rules of evidence being dispensed with, no element essential to a fair trial can be disregarded; also, one whose property rights are being affected, must usually be given the opportunity to present evidence, cross-examine witnesses and inspect documents. (56 Cal.Jur.2d § 203.) That being so,

[2]The general rule is thus followed that ''[c]ourts are reluctant to interfere with administrative action prior to its completion and in this sense not final.'' (42 Am.Jur., Public Administrative Law, § 194.)

the action here taken by the real parties is akin to that provided by section 581, subdivision 1, Code of Civil Procedure, which authorizes a voluntary dismissal by the plaintiff at any time before the commencement of the trial provided that no affirmative relief is sought by the defendant. Subject to a few exceptions, the right of voluntary dismissal is an absolute one—in fact the court has no discretion in the matter. (*Simpson* v. *Superior Court,* 68 Cal.App.2d 821 [158 P.2d 46].) As a result of the real parties' action, therefore, there was nothing for the commission or council to decide. For that reason alone, the trial court properly sustained the demurrer without leave to amend.

In the present posture of the case, it would seem that petitioner has pursued the wrong remedy. If he believes that the present or future use of the auditorium violates the subject ordinance and that his property is thereby affected to a greater degree than the public generally, restraint by injunction might well be available, upon proper pleading and proof, against the operation and maintenance complained of. See *Hopkins* v. *MacCulloch,* 35 Cal.App.2d 442 [95 P.2d 950]. The judgmemt is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied April 24, 1963, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1963.